**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BRIDGET AGAPITO,                          )
Parent and Next Friend of H.A, et. al     )
                                          )          **Case No. 050-1935 (RMC)**
                    Plaintiffs,           )
                                          )
        v.                                )
                                          )
THE DISTRICT OF COLUMBIA,                 )
                                          )
                    Defendants            )
_____ )

**PLAINTIFFS' MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiffs, by and through their attorneys Tilman L. Gerald

and James E. Brown & Associates, PLLC, and in their Memorandum of Points and Authorities

Submitted in Support of Their Motion for Summary Judgment respectfully represent unto this

Honorable Court as follows:

**I.        FACTUAL BACKGROUND**

In the instant case, the Plaintiffs commenced litigation against the Defendants pursuant to

IDEA, Title V of the District of Columbia Municipal Regulations ("DCMR"), and 42 U.S.C §§

1983, 1988 to enforce their statutory right to seek reimbursement for reasonable attorneys fees as

prevailing parties in administrative proceedings. **See Compl. ¶¶ 2-3.** Under the IDEA the District

of Columbia Public School System, (hereinafter referred to as "Defendant") had an obligation to

provide the children of the Plaintiffs with access to a free and appropriate education (hereinafter

referred to as "FAPE"). **See Compl. ¶¶ 1-4bbb.** Plaintiffs are the parents and/or guardians of

students who, at all times relevant hereto, attended schools in the District of Columbia Public Schools system, and were residents of the District of Columbia ("D.C.").

At all times relevant hereto, the children of the Plaintiffs were students who were then and continue to be eligible to receive special education services and benefits under the Individuals with Disabilities Education Act (IDEA) and its re-authorized version, the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA") in the District of Columbia. In 2004 and early 2005, each Plaintiff, by and through counsel, brought claims against Defendant DCPS for its failure to the provide special education services and benefits to which each of the Plaintiffs were entitled and which the Defendant required to provide to the students, individually and severally under the IDEA and IDEIA. **See Compl. ¶¶ 1-4bbb.**

As a result of each administrative due process hearing request, each Plaintiff received some or all of the relief sought, thereby making each Plaintiff a prevailing party. **See Plaintiff's Statement of Material Facts ¶¶ 30-86**. Pursuant to the DCPS' Office of the General Counsel's November 2004 Attorney Fee Memorandum Plaintiffs, through counsel, submitted the certified invoices between April 29, 2005 and June 27, 2005. **See Plaintiff's SMF ¶ 1; see also Hearing Officer's Determinations attached in Compl. as Exhibits 1-54**. By letter dated August 4, 2005, over the signature of Erika L. Pierson, acting General Counsel for Defendant DCPS, counsel for Plaintiffs were advised that payment of the reasonable attorneys fees was denied "...due to the unauthorized practice of law by the attorneys involved. . . .[and] [t]he District of Columbia Public Schools will not pay attorney fees for attorneys who are not are not licensed to practice law in the District of Columbia..." **.** The attorneys who had represented the Plaintiffs in the matters in the subject the Hearing Officer's Determinations were either attorneys who were members of the District of Columbia bar or admitted to practice in other jurisdiction under the exceptions set forth in Rule

49 of the District of Columbia Court of Appeals.  **See Plaintiff's SMF ¶ 29.**  To wit, Miquel Hull

has been, at all times pertinent hereto, a duly licensed member of the District of Columbia Bar.  **See**

**Plaintiff's SMF ¶ 1.**  Domiento Hill, Marshall Lammers, Brenda McAllister and Christopher West,

were admitted to the bars of other states and were practicing under 49(c)(5)[1] or 49(c)(8)[2].  **See**

**Plaintiff's SMF ¶ ¶ 1,2,8.**

In February 2001, Mr. Hill, at that time a member in good standing of the Maryland and

employed as a staff attorney with James E. Brown & Associates, PLLC, was accused of engaging

in the unauthorized practice of law in the District of Columbia. Mr. Hill's practice consisted of

representing children with special needs before the DCPS Office of Student Hearings pursuant to

Rule 49(c)(5).  **See Plaintiff's SMF ¶ 8.**  By letter of May 14, 2003, in addition to acknowledging

Mr. Hill's response, Mary Froning, a member of the Committee on the Unauthorized Practice of Law

(hereinafter "CUPL"), advised Mr. Hill that his practice before DCPS Office of Student Hearings

---

[1] **Rule 49.  Unauthorized Practice of Law.**

  **(c)  Exceptions.**  The following activity in the District of Columbia is excepted from the prohibitions in section (a) of this Rule, provided the person is not otherwise engaged in the practice of law or holding out as authorized or competent to practice law in the District of Columbia:

      **(5) District of Columbia Practitioner:** Providing legal services to members of the public solely before a department or agency of the District of the Columbia, where:
          (A) Such representation is confined to appearances in proceedings before tribunals of that department or agency and other conduct reasonably ancillary to such proceedings;
          (B) *Such representation is authorized by statute, or the department or agency has authorized it by rule and undertaken to regulate it*;
           (C) If the practitioner has an office in the District of Columbia, the practitioner expressly gives prominent notice in all business documents of the practitioner's bar status and that his or her practice is limited consistent with section (C); and
          (D) If the practitioner does not have an office in the District of Columbia, the practitioner expressly gives written notice to clients and other parties with respect to any proceeding before tribunals of that department or agency and any conduct reasonably ancillary to such proceedings of the practitioner's bar status and that his or her practice is limited consistent with this section (c)." (Emphasis added)

[2]        (8)

3

would be governed by the provisions of 49(c)(5) without engaging in the unauthorized practice of law.  **See Plaintiff's SMF ¶ 7.**  Subsequent thereto on October 27, 2003, pursuant to an inquiry initiated by attorney Michelle Tuwiner, Julie B. Rottenberg, also a  member of the CUPL, wrote, inter alia, that "...I understand that your practice in the District of Columbia is limited to practice before the District of Columbia School Board pursuant to its rules and regulations.  The Committee has determined such a practice falls under the exception to Rule 49 as set forth in Rule 49(c)(5).  **See Plaintiffs SMF ¶ 9**.  Therefore, you may practice before D.C. schools without being admitted in the District of Columbia..."  Id.

Prior to April 28, 2005 attorneys who were not members of the District of Columbia bar were allowed to represent parents in administrative due process hearings under the IDEA without objection from DCPS.  **See Plaintiff's SMF ¶¶ 3, 5.**  Further, DCPS would routinely reimburse parents represented by lawyers who were not members of the bar of the District of Columbia for the legal services rendered, albeit generally untimely.  The lawyers who represented the Plaintiff parents in this matter practiced in good faith under the exception of Rule 49(c)(5) at all times relevant hereto. The Court should note that DCPS has a truly dismal record of reimbursing attorneys fees and it has, from time to time, refused and failed to reimburse parents for attorneys fees for extraordinary periods of time for reasons (and more often than not for no reason) totally unrelated to the bar membership of parents' counsel.

The "Rottenberg" interpretation as was clearly set forth in the "Tuwiner letter"  remained in effect until the CUPL issued a somewhat different interpretation predicated upon an inquiry that was made by Quinne Harris-Lindsay, DCPS senior attorney advisor, on January 27, 2005. **See Plaintiff's**

**SMF ¶10; see also Exhibit 7.**     The issue presented for resolution in the ""Harris-Lindsey" memorandum was

> [W]hether D.C. Court of Appeals and the rules of professional conduct require an attorney representing a parent in administrative due process hearings under the Individuals with Disabilities act, to be a member of the District of Columbia bar as a prerequisite to representation....[s]ince the District of Columbia does not have a statute or department rule authorizing the practice of non-DC barred attorneys in special education due process hearings, such practice is barred by the general prohibition of Rule 49(a)...DCPS/OGC believes that all attorneys representing special education clients must be active members in good standing of the District of Columbia Bar. Therefore, DCPS respectfully requests that parent's counsel, who is not an attorney licensed in to practice law in the District of Columbia, be disqualified as counsel in this case.

On February 1, 2005, Mr. Hill made another inquiry to the "CUPL" to determine if his continued representation of parents in administrative due process hearings before the DCPS Office of Student Hearing was still permissible under Rule 49(c)(5). **See Plaintiffs SMF ¶ 12** ; **see also Exhibit 8.** Mr. Hill was unaware of the "Harris-Lindsey" memorandum at the time he wrote the "CUPL" in February 2005. **See Plaintiff's SMF ¶12; see also Exhibit 8.** The "CUPL" did not respond to Mr. Hill's February letter. Thereafter on April 11, 2005 after one of the Hearing Officers refused to allow an attorney (in good standing with the bars of the states of New Jersey and Maryland with an application pending in the District of Columbia) who had recently joined the law firm of James E. Brown & Associates, James E. Brown, Esq., wrote Kelly Evans, Executive Director of the State Enforcement and Investigations Division for Special Education ("SEID") seeking clarification on the issue of whether only lawyers licensed in the District of Columbia may represent parents in administrative due process hearings before the DCPS Office of Student Hearings. **See Plaintiffs**

**SMF ¶¶14,15** ; **see also Exhibit 9**.  In his response dated April 19, 2005, Mr. Evans remarked, in pertinent part, as follows:

> [I] have been aware for sometime of the basic issue presented- whether attorneys who are not licensed in the District of Columbia may practice law and lawfully represent clients in special education administrative hearings set before impartial hearing officers who adjudicate such hearings on behalf of DC Public Schools. You should be aware that I am putting together a set of policy recommendations for executive administration and the Board of education to squarely address this question by amendment to Title 5 of DC Code of Municipal Regulations. The goal will be to clarify the rules and eliminate any ambiguity that may now exist as to whether or not such representation constitutes the unauthorized practice law in so far as representation in special education due process hearings is concerned..." **See Plaintiff's SMF ¶ 16; see also Exhibit 10.**

It is noteworthy to mention that Mr. Evans also stated that "ultimate policy decisions" rest with the Superintendent and the Board of Education for the District of Columbia.  **Id.**

By letter of April 28, 2005, addressed to Veleter Mazyck, Esquire, then DCPS General Counsel, over the signature of Ms. Rottenberg, the CUPL stated that since DCPS does not authorize the appearance of attorneys who are not members of the D.C Bar to appear before it, "...attorneys who are not admitted to the D.C. Bar may not engage in the practice of law in administrative hearings before DCPS..."  **See Plaintiffs SMF ¶ 19; see also Exhibit 11.**  Interestingly enough, the "Harris-Lindsey" memorandum did not make any reference to the exception provided in Rule 49(8).

Counsel for Plaintiffs, however, did not become privy to the more recent interpretation until on or about May 5, 2005.  On July 28, 2005, Mr. Hill wrote Ms. Froning of the CUPL seeking clarification of the recent interpretation attempting to make certain that he was not unwittingly engaging in the unlawful practice of law with respect top his previous practice under the Rule 49(c)(5) exception based upon earlier interpretations emanating from the CUPL.  **See Plaintiffs SMF ¶ 20; see also Exhibit 13.**  In her August 3, 2005 response, via email, to Mr. Hill, Ms. Froning

advised that "...because the school system belatedly clarified their position <u>only recently</u> (emphasis added), the committee will hold harmless anyone who in good faith practiced under the murky rules that existed prior to April 28, 2005..." **See Plaintiff's SMF ¶¶ 21,22; see also Exhibit 14.** With regard to the attorneys who represented Plaintiffs at the administrative level, with the exception of Mr. Lammers, were all seasoned attorneys who had regularly represented parents in special education administrative due hearings in hundreds of case without incident. **See Plaintiff's SMF ¶ 23**. In fact, Mr. West is a former employee of DCPS having served as an attorney advisor prior to joining the law firm of James E. Brown & Associates. **See Plaintiff's SMF ¶ 25.** Additionally, several attorney advisers employed by the DCPS/OGC were not members of the D.C. Bar including but not necessarily limited to attorneys Primes, Puckett, and Whitman-Russell. The appearances of Plaintiffs' counsel in administrative due process hearings were pursuant to and in full conformity with Rule 49(c)5) as set forth in the May 14, 2003 and October 27, 2003 opinion letters from the CUPL and were in good faith. **See Plaintiff's SMF ¶ ¶ 7, 9**.

The attorneys who provided representation to the Plaintiffs in the matters before this Honorable Court did so in good faith and consequently did not engage in the unauthorized practice of law. Plaintiffs are entitled to reimbursement of reasonable attorney fees predicated upon the favorable outcome of the Hearings Officer's Determinations. Plaintiffs assert that the Hearing Officer's Determinations can be enforced in summary action by this court.

## II.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Waterhouse v. District of Columbia*, 298 F.3d

989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586.

It is undisputed that prior to the April 28, 2005 interpretation, the CUPL's October 27, 2003 interpretation of Rule 49(c)(5) governed the appearance and the practice of attorneys that were not admitted to the bar of the District of Columbia in administrative due process hearings before the DCPS Student Hearing Office. **See Plaintiff's SMF ¶ ¶ 7, 9**. That letter squarely addressed and resolved the issue of whether counsel representing parents in due process hearings were required to be members of the District of Columbia bar. **Id.** Further, since the District of Columbia Board of Education adopted the language from the IDEA with respect to representation of parents at due

process hearings, and it has, at no time relevant hereto, ever promulgated a policy that specifically addresses this issue prior to April 28, 2005, attorneys who in good faith believed that they could legally represent parents in special education due process hearings can not reasonably nor fairly be said to have engaged in the unauthorized practice of law at any time relevant hereto. **See Title 5 D.C.M.R. hereto attached as Exhibit 17.**

There is absolutely no basis in law or fact that should undermine the integrity of the Hearing Officers Determinations whereby each Plaintiff received some or all of the relief sought regarding entitlement to a free and appropriate education. Defendants, having been previously advised as to the bar affiliations of Plaintiff's counsel, knowingly waived any right to raise bar status as a defense in forty-four (44) of the fifty-four (54) cases included herein. Plaintiffs should not be precluded from enforcing their statutory right to seek reasonable attorneys fees as provided by IDEIA. There are no genuine issue of any material fact here, and this Honorable Court should grant the Plaintiffs' motion for summary judgment.

## III. <u>ARGUMENT</u>

### A.   <u>PLAINTIFFS ARE PREVAILING PARTIES AND ARE ENTITLED TO REIMBURSEMENT FOR REASONABLE ATTORNEY FEES.</u>

Plaintiffs are prevailing parties and are entitled to reimbursement for reasonable attorney fees and accordingly this Honorable Court has the authority to award the Plaintiffs in this matter attorneys' fees  under the 20 U.S.C. §1415(i)(3)[3] of the IDEA and 42 U.S.C. §1983[4] and §1998[5] of

---

[3]20 U.S.C. §1415(i)(3)(B) of the Individuals with Disabilities Act provides "[i]n an action or proceeding brought under this section [1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is a prevailing party."

[4]42 U.S.C. § 1983; "Every person who, under the color of any statute, ordinance, regulations, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured

the Civil Rights Act.  Under the IDEA, parents who prevail at the administrative level in securing

special education rights for their children are entitled to seek reimbursement for attorneys' fees.  This

statutory right to seek fees is well settled a principle in special education law.  In *Moore v. District*

*of Columbia*, 907 F.2d 165 (1990), the Court of Appeals for the District of Columbia,  in interpreting

the former controlling statues, the Education of the Handicapped Act ("EHA") and the Handicapped

Children's Protection Act ("HCPA") allowed an independent cause of action for attorneys' fees, held

that the courts may award parents attorney fees upon prevailing in administrative matters.  See

*Moore v. District of Columbia*, 907 F.2d 165 (1990).  Additionally, in *Select Milk Producers, Inc.*

*V. Johanns*, 400 F. 3d 939 (D.C.Cir 2005), the Court outlined the prongs that a party must satisfy

to achieve "prevailing party"in its decision.   While noting that prevailing party status may be

obtained through litigation on the merits, the Court also indicated that settlement agreements

enforced through consent decrees may also serve as a basis for an award of attorneys' fees.  Judge

Edwards, in *Select Milk*, agreed with the principles of the *Buckhannon* three prong test, which states

that "1) in order to be a prevailing party, a claimant must show that there has been a court-ordered

change in the legal relationship between the plaintiff and the defendant; 2) a prevailing party in

whose favor a judgement is rendered, regardless of the amount of damages awarded; 3) a claimant

is not a prevailing party merely by virtue of having acquired a judicial pronouncement

unaccompanied by judicial relief." See *Select Milk Producers, Inc. V. Johanns*, 400 F. 3d 939

(D.C.Cir 2005)(quoting *Buckhannon Board & Care Home, Inc.  v. West Virginia Department of*

*Health & Human Resources*, 532 U.S. 598 (2001) ).

---

by the Constitution and laws, shall be liable to the party injured in an action at law. . ."

[5]42 U.S.C. § 1988(b) states that "[i]n any action or proceeding to enforce a provision of sections . . .1983. . ., the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs."

Applying the first prong of *Select Milk* to the facts of this case, each Plaintiff demonstrated, either through litigation on the merits or a settlement on the record, that a change in the legal relationship occurred.  In ten (10) of the fifty-four (54) Hearing Officer Determinations (hereinafter HOD), the Plaintiffs litigated the merits of their respective claims.  After consideration of the evidence presented, an Impartial Hearing Officer, in each instance, awarded the Plaintiffs some or all the relief sought in connection with their claim.  In the remaining forty-four (44) HOD's, the Defendant offered to settle the Plaintiffs claims on the record by agreeing to provide the Plaintiff with some or all of the relief sought in their administrative due process hearing request. After a hearing officer makes a finding that the terms of the settlement agreements are in the best interest of the child, the settlements agreements are then incorporated into an HOD and subsequently become final administrative decisions.  See 20 U.S.C. §1415(g).  Therefore, the forty-four (44) HOD's incorporating the parties settlement agreements, having received the approval of an Impartial Hearing Officer are similar to "consent decrees" referred to in *Buchkhannon* and *Select Milk*.  As a result of the foregoing,  "prevailing party" status is conferred upon the Plaintiffs because the legal relationship between the Plaintiffs and the Defendant occurred.  See *Select Milk Producers, Inc. v. Johanns*, 400 F. 3d 939 (D.C.Cir 2005); see also *Buckhannon Board & Care Home, Inc.  v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).

Turning to the second prong, the fifty-four (54) HOD's were judgments rendered on behalf of the Plaintiffs and therefore, satisfies the second prong.  "The term 'judgment' includes 'a decree and any order from which an appeal lies."  *Select Milk Producers, Inc.*, 400 F. 34 939 (D.C.Cir 2005) (quoting BLACK'S LAW DICTIONARY 876 (7th ed. 1999)).  Since each of the fifty-four (54) HOD's are similar to judgments and in each case rendered in favor of the Plaintiffs, each HOD falls

within legal definition of judgment as reconciled in *Select Milk*. *Id*; **see also Compl. at 1-4bbb**.

Finally, the issuance of the fifty-four (54) HOD's offered each of the Plaintiffs "judicial relief".

Taking direction from *Select Milk*, each plaintiff obtained "redress or benefit,[omit] equitable in

nature that [the] party ask[ed] . . . ." *Select Milk Producers, Inc. v. Johanns*, 400 F. 34 939 (D.C.Cir

2005). Each HOD provided each Plaintiff with some or all of the relief sought in their administrative

due process hearing request. As the Plaintiff has clearly demonstrated that they are the prevailing

party for purpose of the fee-shifting statue, the Plaintiff will address the issue regarding the

unauthorized practice of law. **See Compl. at 1-4bbb**.

## B. PLAINTIFFS' COUNSEL DID NOT ENGAGE IN
## THE UNAUTHORIZED PRACTICE OF LAW

Contrary to the reasons given by DCPS to legitimize its refusal to reimburse reasonable

attorney fees to Plaintiffs, counsel for the Plaintiffs have not engaged in the unauthorized practice

of law. It is abundantly clear, even from just a cursory perusal of the facts surrounding this matter,

that there is no factual or legal basis which supports the decision that was made with respect to the

denial of payment as well as the position advocated in this matter by DCPS. One would presume

that given the history of the relationship between the counsel for the respective parties that counsel

for DCPS knew or certainly had reason to know, the bar respective affiliations of each counsel

representing Plaintiffs in the matters presently before this Honorable Court. Therefore, the question

of whether counsel for the Plaintiffs engaged in the unauthorized practice of law at the administrative

level is one that this court, based upon the attending factual history of this matter, will answer in the

negative.

Moreover, the attorneys, who according to the Defendant have engaged in the unauthorized

practice of law, have over the years regularly represented parents such as these Plaintiffs in special

education administrative due process hearings before the Office of Student Hearings. **See Plaintiff's SMF ¶ 1.** Over the years, these attorneys were permitted to represent parents without objection and with unfailing frequency. However, albeit the Defendant has in the past failed to reimburse other parents for reasonable attorneys fees, the bar affiliations of counsel has never been one of the reason proffered by the Defendant in explanation of its denial of attorneys fees. In fact, the first and only time DCPS Office of the General Counsel raised any concern with respect to the bar affiliations of Plaintiffs' counsel was on August 4, 2005. **See Plaintiff's SMF ¶ 29** ; **see also Exhibit 16.** On the date aforesaid, Erika Pierson, acting General Counsel for DCPS advised James E. Brown, Esq., that the certified invoices for reimbursement of the attorneys fees had been denied because the attorneys who had represented Plaintiffs were not members of the bar of the District of Columbia. *Id*. That letter, however, presented a new and evolving tactic developed by DCPS to ventilate the all too often concealed animus directed to the law firm of James E. Brown & Associates with respect to the timely payment of invoices submitted as well as the dismal and inefficient manner in which it manages special education. *Id.* The position enunciated by Ms. Pierson was contrary to convention as well as the established practice and custom governing the practice of special education law before the DCPS Office of Student Hearings prior to April 28, 2005.

At first blush, this appeared to be a tactic to unduly delay reimbursement of attorneys fees. However, a closer look perhaps reveals a conscious effort to unfairly impede if not preclude parents from being able to obtain competent representation in special education proceedings under IDEA and its progeny. In *Johnson v. District of Columbia,* 190 F.Supp.2d 34 (D.D.C 2002), Plaintiff in that case argued that the Defendant had engaged in "vindictive and retaliatory effort[s] to deny representation to parents of children in need of special education services. Judge Sullivan observed

in that case that precluding awards of fees to plaintiffs...would undermine the purposes of IDEA...[t]he fee provision serves to assist parents in obtaining legal representation, and further deters the school system from violating the substantive provisions of the law..."

In this case, the actions of the Defendant are without question disingenuous and calculated, if not vindictive and retaliatory, designed to negatively impact the ability and availability of able competent counsel to parents with children with special education needs.  See *Johnson*, 190 F.Supp.2d 34 (D.D.C 2002).  The Defendant knows full well that the attorneys who represented the Plaintiffs in this case have not engaged in the unauthorized practice of law and thusly can not in good faith put forth a cognizable claim therefor.  To wit, since December 2002, the Office of General Counsel for DCPS has been fully knowledgeable of the bar affiliations of all attorneys in the law firm of James E. Brown & Associates, PLLC.  **See Plaintiff's SMF ¶ 1** ; **see also Exhibits 1&2.** Further, for the past five (5) or six (6) years, counsel for Plaintiffs have relied upon the advice and consent of the Court of Appeals for the District of Columbia's  CUPL which had indicated that attorneys who are members in good standing of bars of other jurisdictions could properly and legally represent parents in special education administrative due process hearings before the Office of Student Hearings under Rule 49(c)(5).  **See Plaintiff's SMF ¶¶ 7, 9** .

In a May 14, 2003, letter to Domiento Hill, one of the Plaintiffs' attorneys, Mary Froning, a member of the CUPL advised Mr. Hill to familiarize himself with the then recent changes to Rule 49(c)(5) with respect to his representation of clients before any agencies of the District of Columbia. . **See Plaintiff's SMF ¶ 7.**  A few months later,  Julie.B. Rottenberg, also a member of the "CUPL", in response to an inquiry made by Michelle Twiner, an attorney licensed in the state of Maryland engaged in the practice of special education law in the District of Columbia, unconditionally stated that Ms. Tuwiner's practice was permissible under Rule 49(c)(5).  Specifically, Ms. Rottenberg

advised Ms. Tuwiner as follows: "...First, as we discussed, your letterhead should be modified to reflect that you are admitted in Maryland only.  Second, I understand that your practice in the District of Columbia is limited to practice before the District of Columbia School System pursuant to its rules and regulations.  The Committee has determined such a practice fall under the exception to Rule 49 as set forth in Rule 49(c)(5).  Therefore, you may practice before the D.C. schools without being admitted in the District of Columbia..."  **See Plaintiff's SMF ¶ 9**; **see also Exhibit 6.** Plaintiffs' counsel relied in good faith upon the opinions and representations they received from the "CUPL" addressing the specific issue of whether attorneys who are not members of the District of Columbia bar can represent clients in special education administrative due process hearings before DCPS to sanction their practice.  Plaintiff's counsel has, at all times pertinent hereto, been in full compliance with the requirements of 49(c)(5) as the firm letterhead clearly delineates with undue clarity the bar membership of its attorneys and unequivocally states that their practice is limited to special education law.  **See Letterhead herein attached as Exhibit 5**.  It is noteworthy to mention that DCPS did not raise any question or otherwise challenge, formally or informally, the ability of Plaintiffs' counsel to represent parents of children with special education needs in administrative due process hearings before DCPS prior to May 2005.  Again, these are attorneys who have appeared regularly before the DCPS in hundreds of cases and who have been proactive in seeking the advise of the CUPL with regard to their ability to practice within the confines of Rule 49.

Plaintiffs' counsel, who were not members of the District of Columbia bar, continued to appear regularly and in unfettered fashion in administrative due process hearings until early May 2005, at which time attorney advisers for DCPS began to object to their appearance on the basis that DC bar membership was required to represent parents in administrative due process hearings.  **See**

**Plaintiff's SMF ¶13.** The impetus behind the objections which were generally made on the record at the beginning of a scheduled hearing, was an opinion that emanated from the "CUPL" on April 28, 2005 over the signature of Committee member Julie Rottenberg. **See Plaintiff's SMF ¶19**; **see also Exhibit 11.** In her April 28, 2005, letter addressed to Veleter M.B. Mazyck, then DCPS General Counsel, Ms. Rottenberg, in response to the DCPS inquiry as to "...whether attorneys and advocates who are not members of the D.C. bar may engage in the practice of law in administrative hearings, before the DCPS..." inter alia, stated as follows:

> ..[W]e understand from the attached opinion provided to us by DCPS that DCPS does not authorize the appearance of non-D.C. attorneys before its tribunals and that DCPS does not undertake to regulate the practice of persons who appear before it. Therefore, pursuant to Rule 49, attorneys who are not admitted to the D.C. Bar may not engage in the practice of law in administrative hearings before DCPS. This also applies to private attorneys not employed by DCPS who represent DCPS in such hearings because, as we understand it, DCPS does not authorize by rule, or undertake to regulate their practice..."(emphasis added). *Id.*

The opinion to which reference is made in the "Rottenberg letter" is contained in the January 28, 2005 memorandum that was transmitted to the "CUPL" over the signature of Quinne Harris-Lindsey. **See Plaintiff's SMF ¶ 10**; **see also Exhibit 7.** In her memorandum, Ms. Harris-Lindsey opined "...that all attorneys representing special education clients must be active members in good standing of the District of Columbia bar..." She goes on to state that the Board of Education for the District of Columbia, the entity that regulates the conduct of special education hearings, had not undertaken any action to authorize the practice of attorneys who are not members of the District of Columbia Bar. **See Plaintiff's SMF ¶ 10**; **see also Exhibit 7.** The proposition advocated by Ms. Harris-Lindsey on behalf of DCPS is one first impression and marks the first time that DCPS has publicly enunciated a policy restricting the representation of parents of children with special education needs to "active members in good standing of the D.C. bar".

To say the least, the invocation of a policy by the DCPS Office of General Counsel astricting the representation of parents in administrative due process hearings to active members of the D.C. bar constitutes an extremely brazen incursion into a sphere of responsibility which, according to Kelly Evans, is specifically and uniquely reserved for Board of Education and/or the Superintendent of DCPS.  Furthermore, it represents an extraordinary departure from past practices and customs that Board of Education has nourished and allowed to develop over the course of time as well as the guidance and counsel the CUPL articulated and provided to Plaintiffs' counsel and others similarly situated with respect to the issue of unauthorized practice of law.  Suffice to say that as late as April 19, 2005, the Board of Education for the District of Columbia, which according to Ms. Harris-Lindsey is the entity that regulates the conduct of hearings, had not promulgated a policy that restricted the representation of parents in administrative due process hearings to active members of the D.C. bar.  **See Plaintiff's SMF ¶ 16**; **see also Exhibits 10, 12.**  Moreover, the Board of Education, in adopting language identical to that of the IDEA regarding the availability of counsel to parents, did not include any language restricting representation of parents to D.C. bar members only.  **See Title 5 of the D.C.M.R 3031.1 herein attached as Exhibit 17.**  Mr. Evans, addressing this issue, stated that he was in the process of formulating a "...set of policy recommendations for executive administration and the Board of Education this question by amendment to Title 5 of the DC Code of Municipal Regulations.  The goal will be to clarify the rules and eliminate any ambiguity that may now exist as to whether or not such representation constitutes the unauthorized practice of law ..."  **See Exhibit 10**.

Historically and certainly since 2002, the Board of Education, having been fully advised as the bar status of attorneys representing parents of children with special education needs, have

allowed attorneys adhering to the strictures set forth in Rule 49 to lawfully represent parents in administrative due process hearings. **See Plaintiff's SMF ¶ 1.** It is indeed therefore reasonable to infer that the Board of Education, in furtherance of its duty to regulate the conduct of administrative special education due process hearings, did in fact undertake to regulate the practice of law by not imposing any restriction upon the representation of parents in administrative due process hearings to active members of the D.C. Bar. DCPS has singly embarked upon an agenda that, on its face, is dangerous and calculated to eviscerate the ability of parents with children with special education needs to retain competent legal counsel to represent their interests. The decision of DCPS to deny reimbursement of reasonable attorney fees is unconscionable and DCPS is without any factual or legal underpinnings to buttress its decision.

To wit, in the fifty-four (54) cases heard before an Impartial Hearing Officer in this case, the counsel for the Defendant objected a total of seven (7) times. **See Plaintiff's SMF ¶ ¶34, 45, 73, 74, 77, 78, 82.** In ruling upon the objection to Plaintiffs' counsel appearance, the Impartial Hearing Officer's overruled each objection citing the long history of the Defendant permitting attorneys, other than active members of the DC bar, to represent parents in administrative due process hearings without objection as well as the absence of any genuine established policy (written or otherwise) that would effectively proscribe their appearance as parents' counsel. **See Plaintiff's SMF ¶ ¶34, 45, 73, 74, 77, 78, 82**; **see Hearing Officer's Determinations attached in Compl. as Exhibits 5, 14, 41, 42, 45, 46, 50.** In the remaining forty-seven (47) cases, heard before the Impartial Hearing Officer, counsel for the Defendant did not raise any objection to the appearance of Plaintiffs' counsel. **See Hearing Officer's Determination attached in Compl. as Exhibits 1-4, 6-13, 15-40, 43-44, 47-49, 51-54.**

Although Plaintiffs' counsel acknowledges the April 28, 2005 letter from the "CUPL" written in response to the "Harris-Lindsey" memorandum, Plaintiffs maintain that the Defendants can not put forth any plausible argument whatsoever that would reasonably serve a basis for denying reimbursement of any application for attorneys fees for work generated prior thereto.   In fact, on August 3, 2005, Mary Froning, a CUPL committee member, in a response to an inquiry made by Domiento Hill, wrote that "...because the school system belatedly clarified its position only **recently** (emphasis added), the committee will hold harmless anyone who in good faith practiced under the murky rules that existed prior to April 28, 2005 (emphasis added).  **See Plaintiff's SMF ¶ 22**; **see also Exhibit 14.**  That marks the date when the Committee's clarified its opinion in a letter to DCPS (based upon a January 27, 2005 memorandum from DCPS)..."  Therefore, up to and including April 28, 2005, the official position of theCUPL was that any attorney who had practiced in good faith under 49(c)(5) had not engaged in the unauthorized practice of law and would be held harmless by the CUPL.   It is undisputed that responsibility for making any decision relating what conduct constitutes the unauthorized practice of law in the District of Columbia falls within the exclusive purview of the CUPL, not DCPS.

That is to say, Erika Pierson (nor anyone else at DCPS) has any authority whatsoever to define what conduct constitutes the unauthorized practice of law.  DCPS is powerless to substitute its interpretation of Rule 49 for that of the "CUPL".  In the cases at bar, the attorneys representing Plaintiffs, were either active members of the D.C. bar or attorneys licensed in other jurisdictions who practiced in good faith under Rule 49(c)(5) or in the case of Marshall Lammers, under 49(c)(8).  Accordingly, the August 4, 2005, decision has no legal significance and this Honorable Court should order the Defendant to cease the perfidious farce which it has embarked upon in an attempt to divest

Plaintiffs of reimbursement of reasonable attorneys fees provided under IDEA to prevailing parties and order the Defendant to reimburse Plaintiffs reasonable attorneys fees forthwith in addition to fees and costs associated with this action.

Secondly, in support of OGC's "new found" position, January 2005 memorandum from the Office of General Counsel relied on *In re Arons*, 756 A.2d 867 (2000), a Delaware Supreme Court case, which claimed that IDEA did not grant parents the right to choose non-licensed representation. The facts of that case are distinguished from this case because *In re Arons* involved parents being represented at special education administrative due process hearings by non attorneys. *See In re Arons*, 756 A.2d at 868. These individuals were advocates with special knowledge and training on special education and children with disabilities, but lacked legal training. *Id*. The Delaware Supreme Court held that these individuals were engaging in the unauthorized practice of law. The Court reasoned that because the word "represent" was absent from the pertinent statutory provision, it somehow denoted Congress' intent to distinguish between expert and legal counsel. . . .  See *Id*. at 870-71. The Court further reasoned that there is an "inherent and presumptive representational authority with which counsel [is] cloaked and non-lawyers are not." *Id*. at 872-73.  Here, counsel for the parent are licensed attorneys, albeit not in D.C.,  therefore in the words of the *Arons* Court, are cloaked with "representational authority" and are capable of performing the functions of competent legal counsel.  Thus for the foregoing reasons described above, this Court must find that DCPS' argument fails and must support a position that no counsel for the parent engaged in the unauthorized practice of law.

Finally, to avoid reimbursing counsel for the Plaintiffs for fees incurred in connection with obtaining special education services and benefits for their children, DCPS is attempting arbitrarily apply the April 28, 2005 CUPL opinion retroactively.  However, there are several problems with that

application, one being that DCPS' Office of the General Counsel has no authority to promulgate policy in as much as the only body charged with the responsibility to promulgate, clarify or expand regulations in the area of education in the District of Columbia is the *Board of Education*.  (emphasis added).[6]  Under Title 5 of the District of Columbia Municipal Regulations ("DCMR"), governing education in the District of Columbia, essentially states all valid regulations must be promulgated by the D.C. Board of Education through a rule making process. *See* 5 DCMR § 200 *et. seq.* (2002). Thus, any rule making action must go through a process of consideration of drafts, revisions, and public comments. *See* 5 DCMR § 200 *et. seq*.

With respects to retroactively applying statutes, etc., the U.S. Supreme Court has held there is a presumption against the retroactive application of statutes. *Landgraf v. USI Film Products*, 511 U.S. 244 (1994).  When a case implicates a statute enacted after the events in suit, the court's first task is "to determine whether Congress has expressly prescribed the statute's proper reach." *Lee v. Reno*, 15 F. Supp. 2d 26, 44 (D.C.C.A. 1998); *Id*. at 280; *Inmates of D.C. Jail v. Delbert C. Jackson*, 158 F.3d 1357 (C.A.D.C. 1998). If Congress has done so, there is no need to resort to judicial default rules.  However, if the statute contains no such express instruction, "the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with

---

[6] 5 DCMR § 210.1 states:

The official position of the agency in matters of law, including legislation, litigation, Federal administrative proceedings, and other matters that require the development and communication of a legal position external to the agency, *shall be the official position adopted by the Board of Education through resolution, existing policy or rules, or long-standing pattern or practice*. 5 DCMR § 210.1 (Emphasis added).

respect to transactions already completed." *Landgraf*, 511 U.S. at 280. If the statute would operate

retroactively, then it does not govern absent clear congressional intent favoring such a result. *Id.*;

*Inmates of D.C. Jail*, 158 F.3d at 1359.

In determining whether a statute has retroactive effect, the Court reasoned that a statute does

not apply retroactively "merely because it is applied in a case arising from conduct antedating the

statute's enactment." *Landgraf*, 511 U.S. at 269. Rather, courts should consider "considerations of

fair notice, reasonable reliance, and settled expectations." *Id*. at 270; *Inmates of D.C. Jail*, 158 F.3d

at 1361.

Thus, one can clearly conclude that because the DCPS Office of the General Counsel is

neither a court nor a body which is capable of promulgating either law or policy it has no authority

whatsoever to apply the April 28, 20005 CUPL opinion retroactively.    Oddly enough, DCPS has

failed to show that any such policy existed prior to January 27, 2005. To claim that this policy exists

in hindsight is improper because DCPS' Office of the General Counsel does not have the authority

to create rules and regulations.  As outlined in the DCMR[7], an employee of DCPS is incapable of

taking an official position that differs from that of the Board of Education. As discussed earlier, the

DCMR and the Standards Operating Manual does not prohibit non-barred DC attorneys from

representing parents in special education matters. The proper course of action for the Office of the

General Counsel would have been to develop a memorandum and present it to the Board of

Education, who would then undertake to entertain such matter within the purview of its regulation.

One can only view such acts as an attempt by DCPS to forgo its financial obligations and ignore the

---

[7] 5 DCMR § 210.2 states:
There shall be no other official legal position of the agency, or any part of the agency, expressed in any individual Board member, the Superintendent of Schools, or any other employee of the agency. 5 DCMR § 210.2.

22

contractual relationships they entered into with parents to provide special education needs for special needs children. Based upon the foregoing argument and the facts attendant to this issue, this Court should find that counsel for Plaintiffs have not engaged in the unauthorized practice of law and grant the motion for summary judgment in favor of the Plaintiffs on this issue as well.

## CONCLUSION

Therefore, upon the above stated argument, Plaintiffs respectfully request that this Court find that the settlement agreements between the parties are valid enforceable contracts that can be summarily enforced by this Honorable Court, grant Motion for Summary in favor of the Plaintiffs, enter judgment against the Defendants, order the Defendants to remit payment forthwith of all attorneys due and payable under the parties' settlement agreements and award Plaintiffs reasonable attorneys fees and costs incurred in this matter.

Respectfully Submitted,


_____/s/_____
Tilman L. Gerald, Esq.
Unified Bar No. 928796
James E. Brown & Associates, PLLC
1220 L Street, N.W., Suite 700
Washington, D.C. 2000
(202)742-2000
***Attorney for Plaintiffs***

23