UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIDGET AGAPITO,** *o/b/o* : <br> **H.A., a minor** <u>et al</u>. : <br>   : <br> Plaintiffs : <br>   : <br> v. : <br>   : <br> **DISTRICT OF COLUMBIA,** <u>et al</u>. : <br>   : <br> Defendant : <br>   : | Civil Action No. 05-1935 (RMC) |

### PLAINTIFFS' REPLY AND MEMORANDUM OF POINTS AND AUTHORITIES SUBMITTED IN OPPOSITION TO THE DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiffs, by and through their attorneys, Tilman L. Gerald and James E. Brown & Associates, PLLC, and in their Reply and Memorandum of Points and Authorities Submitted in Opposition to the Defendants' Cross Motion for Summary Judgment respectfully represents unto this Honorable Court as follows:

The salient facts in this case are for the most part uncontroverted. Therefore, rather than restate the factual background here, Plaintiffs hereby restates by reference the factual background as is set forth in their Motion for Summary Judgment previously filed and incorporated herewith as though set forth in its entirety. Since the arguments of Defendant with respect to the issue of the unauthorized practice of law as stated in their Opposition and Cross Motion are, in substance, identical, Plaintiffs' will address the issue of the unauthorized practice of law in a single combined response. The issues that remain including the "prevailing party status" and the "reasonableness" of the fees sought will be addressed in the seriatim. Plaintiffs will not here offer any argument with

respect to the 42 U. S. C. §1983 and Section 504 Rehabilitation Act. Plaintiffs reserve the right to respond to the reasonableness of the fee claimed after this court decides the pending dispositive motions.

### I. PLAINTIFFS' COUNSEL WHO WERE NOT MEMBERS OF THE BAR OF THE DISTRICT OF COLUMBIA DID NOT ENGAGE IN THE UNAUTHORIZED PRACTICE OF LAW

In its papers, the Defendant states that DCPS refused to pay Plaintiff's counsel fees "primarily" because Plaintiffs' counsel were not members of the District of Columbia Bar. (See Defendants' Cross Motion for Summary Judgment at p.5) The foregoing statement is a very interesting and even perhaps a very telling revelation by the Defendants especially since the August 4, 2005, letter from Erika Pierson, brief and direct to the point, indicated the "only reason"(emphasis added) the 54 attorney fee applications were denied was because the "Brown attorneys" were not members of the bar of the District of Columbia. Whatever the additional reasons were for denying reimbursement of attorney fees, they were well guarded secret until the Defendants recently filed their cross motion for summary judgment. Therefore, at this juncture, a reasonable inquiry would be, what was the moving force behind the blanket denial of attorneys' fees due to the unauthorized practice of law even though two of the "Brown attorneys" were attorneys licensed to practice law in the District of Columbia. Pivotal to any consideration or analysis of this issue are the questions, when did DCPS first have actual knowledge of the Bar status or membership of the "Brown attorneys" and whether, prior to January 27, 2005, DCPS undertook any steps to prohibit the "Brown attorneys" from appearing before DCPS upon gaining knowledge of their bar status. Plaintiffs submit that DCPS operated under a policy (and/or established practice and custom) whereby it authorized attorneys that were not members of the District of Columbia bar to practice before its

Office of Student Hearings in IDEA proceedings.

In its Opposition to Plaintiffs' Motion for Summary Judgment, the Defendant asserts that Plaintiffs reliance upon opinions emanating from the office the Committee on the Unauthorized Practice of Law (herein after referred to as the "CUPL") in response to inquiries concerning the ability on lawyers not barred in the District of Columbia is misplaced. Initially, the Defendant challenges the efficacy of a May 14, 2003, letter that Domiento C. R. Hill, Esquire, one of the "Brown's attorneys", received from Ms. Mary L. Froning, a member of "CUPL." The Defendant argues that the record is incomplete as Plaintiffs did not attach a copy of the complaint nor the response of Mr. Hill. While the Defendants are correct in that neither the complaint nor Mr. Hill's response was attached, neither of those documents is germane to nor has any bearing on the issue of the alleged unauthorized practice of law by "Brown attorneys".

In her letter to Mr. Hill, Ms. Froning made it abundantly clear that the "CUPL" had reviewed the complaint that was made against him(which resulted in the referral to the "CUPL"), and "having reviewed your response, we are happy to inform you that this matter now has been concluded . . ." The nature of the complaint that was made is of no relevance. However, what is of particular relevance and of significant import, is that the "CUPL" did not find that Mr. Hill had engaged in the unauthorized practice of law. It is well to note that, in her May 14 letter to Mr. Hill, Ms. Froning indicated that she was speaking for the "CUPL." She also referred Mr. Hill to the recent changes in Rule 49(c)(5), requiring lawyers with offices in the District of Columbia to disclose explicitly their bar status. The bar status of the "Brown attorneys" thereafter was and continues to be prominently and explicitly disclosed on the letterhead of James E. Brown & Associates, PLLC. Therefore, DCPS has had actual knowledge of the "Brown attorneys" bar status at least since December 2002, yet they

were allowed to practice in unfettered fashion before the DCPS Office of Student Hearings in IDEA proceedings until the Spring of 2005.

Secondly, the Defendants' challenge to the October 27, 2003, letter from the "CUPL" to Michelle Tuwiner is wholly without merit. For instance, the Defendants, in their Opposition at p.4, state as follows": "...[T]here is no information who Ms. Tuwiner is, what the nature of her practice might have been, or anything that would suggest that was written to her is relevant to the Brown Attorneys . . . " Interestingly enough, the subject of the October 27, 2003, response from the "CUPL" over the signature of member Julie B. Rottenburg is self-explanatory. The answers to the questions are easily and readily discerned from the response of the "CUPL". The "Tuwiner" letter was written in response to Ms. Tuwiner's inquiry concerning her limited practice before the DCPS.

Specifically, Ms. Rottenburg stated, " . . . I understand that your practice in the District of Columbia is limited to practice before the District of Columbia Public School System pursuant to its rules and regulations. The Committee has determined such a practice falls under the exception to Rule 49 as set forth in Rule 49 (c)(5). Therefore, you may practice before D.C. school without being admitted in the District of Columbia . . . " The relevance that Ms. Rottenburg's letter has to the case at bar, simply stated, is that if the "CUPL" sanctioned the limited practice of Ms. Tuwiner, an attorney licensed in the State of Maryland but not in the District of Columbia, to practice before the DCPS under its rules and regulations, the "Brown Attorneys", all of who were at the relevant time period licensed in other jurisdictions (but who are now members of the bar of the District of Columbia), could likewise practice before DCPS pursuant to the 49 (c)(5) exception without engaging in the unauthorized practice of law.

The practical application of the opinion written by Ms. Rottenburg for the "CUPL" is not

limited to Ms. Tuwiner exclusively but rather extends to attorneys who are similarly situated. The "CUPL" again did not opine nor find that Ms. Tuwiner's had engaged in the unauthorized practice of law pursuing a limited practice of law before DCPS pursuant to it rules and regulations.

Although the Defendant tries to give credence to its established position on this issue in the refutation contained in its Opposition (at p.4) wherein the Defendant states that it is " . . . undisputed does not have 'rules and regulations' allowing non-DC barred attorneys to practice in IDEA proceedings . . . ," the clarity that the Defendant wishes this issue had is nonexistent. That argument is hollow and deceptive. The "CUPL" necessarily must have had a factual basis upon which to support its opinion in the "Tuwiner" letter, i.e., that Ms. Tuwiner's limited practice was pursuant to the rules and regulations of DCPS. The Defendant is seemingly basking in and has refused to acknowledge the confusion that has resulted from its' extremely tardy declaration of the new "rules of engagement" relating to the ability of attorneys not barred in the District of Columbia to appear in IDEA proceedings. That is, at least since the Fall of 2003 and probably earlier, without complaint from DCPS and without exception being taken, the "Brown attorneys" who were not members of the District of Columbia Bar regularly appeared before and represented special education clients in IDEA proceedings before the Office of Student Hearings of DCPS.

Thus, DCPS, by allowing attorneys, who were licensed but not in the District of Columbi to appear in IDEA proceedings, had clearly established rules or policy that governed the appearance of attorneys practicing before the Office of Student hearings in special education proceedings. Contrary to the representations it has recently made, DCPS initiated a "policy" of allowing attorneys, not barred in the District of Columbia, to appear in IDEA proceedings, and in so doing, did in fact have rules and regulations, de facto or otherwise, allowing non-DC barred attorneys to practice in

IDEA proceedings. Attorneys reasonably relied in good faith upon the failure of DCPS to challenge their appearance and/or their ability to represent clients in IDEA proceedings by written or oral Rule 49 motion prior to April 2005.

Additionally, if DCPS did not have rules and regulations allowing non-DC barred attorneys to practice in IDEA proceedings, the Impartial Hearing Officers certainly must not have been privy to any communication, written or otherwise, emanating from DCPS relating to this issue prior to the Spring of 2005, because they allowed the "Brown attorneys" to appear and represent clients in IDEA proceedings before them. The Defendant cannot reasonably nor in good faith deny that its' attorney advisers did not challenge attorneys who were not members of the District of Columbia Bar with Rule 49 motions prior to April 2005. The foregoing is of particular importance since the Defendant questions both the credibility and integrity of the "CUPL" as well as the regularity of its investigative process. Most assuredly, the "CUPL" had reason to believe that rules and regulations existed whereby DCPS allowed non-DC barred attorneys to represent clients in IDEA proceedings under the applicable exceptions to Rule 49. The Defendant has consistently been unable to explain the reasons that the "Brown Attorneys", after so many appearances in so many IDEA cases before the DCPS Office of Student Hearings, became the subject of Rule 49 motions in the Spring of 2005.

Thirdly, the dilemma that the Defendant alleges it has with the August 3, 2005 e-mail from "CUPL" committee member Mary L. Froning is incomprehensible. Without a doubt the point of reference for that e-mail is the April 28, 2005, letter from the "CUPL". The "hold harmless" language has nothing whatsoever to do with potential malpractice claims, but rather the opinion of the "CUPL" that it would not find that the attorneys had engaged in the unauthorized practice of law if they had appeared in IDEA proceedings under the "murky rules" that existed prior to April 28,

6

2005. The "CUPL" was apparently and surprisingly broadsided by the sudden change in the position of DCPS as communicated by the January 27, 2005, memorandum from the Office of General Counsel for DCPS. As a result thereof, the "CUPL" reasonably and fairly concluded that given the "murky rules" that DCPS operated under prior to April 28, 2005, and the "belated" clarification of DCPS position, it would be unfair and inequitable for the "CUPL" to find that attorneys had engaged in the unauthorized practice of law if they had a good faith belief that their practice was properly governed by the exceptions to Rule 49 prior to April 28, 2005. The practical application of Froning's letter is that DCPS can not change the rules in the middle of the game and then take advantage of that change to the detriment of others, in this case unsuspecting attorneys.

Therefore, in as much as DCPS had previously reimbursed fees to these attorneys for providing representation in IDEA proceedings, it cannot reasonably refuse to do so now on the feigned and specious grounds that the attorneys were not members of the D.C. bar for to do so would be capricious and arbitrary. Further, if DCPS knew or had any reason to know that any of the "Brown Attorneys" were engaged in the unauthorized practice of law, it had an ethical duty and obligation to report those attorneys to the District of Columbia Bar counsel and/or the "CUPL". The record demonstrates that DCPS did not do so until February 2006, when Erika Pierson filed a bar complaint against Mr. Hill with the State of Maryland. That complaint was summarily dismissed as to Mr. Hill. It should be noted that DCPS denied the billings of two "Brown attorneys" Miguel Hull, Esquire, and Roberta Gambale, Esquire, both of whom have been active members of the District of Columbia Bar at all times relevant hereto. Can DCPS justify denying reimbursement for the legal work these two "Brown Attorneys" provided on the grounds that they too engaged in the unauthorized practice of law? Again, what is the real issue in this case? Certainly not the bar

membership as DCPS wants everyone to believe.

Fourthly, the Defendant has presented little that would sustain its argument that the "Brown attorneys" are not entitled to attorneys' fees because they were not barred in the District Columbia. To support its argument, the Defendant states, inter alia, that the exceptions to Rule 49 do not apply to the "Brown attorneys". In response thereto, Plaintiffs hereby specifically incorporates by reference the argument, i.e. "Plaintiffs' Counsel Did Not Engage in the Unauthorized Practice of Law", made in their motion for Summary Judgment with respect to this issue as though set forth in its entirety. The Defendant's argument that the "Brown attorneys" engaged in the unauthorized practice of law is unavailing. The Defendant has knowingly and willfully propagated a scenario that gives the appearance that the "Brown attorneys" may have unwittingly engaged in the unauthorized practice of law with regard to the 54 cases which are the subject of this litigation.

However, they did not. In November 2004, when the Defendant issued to all members of the special education bar a "Request for Comment on Administrative Guidelines for Fees in IDEA Matters, which had a proposed effected date of January 5, 2005, it did not state that only attorneys who are members of the District of Columbia bar would thereafter be able to appear as counsel in IDEA proceedings before the DCPS Office of Student Hearings. Rather, it is undisputed that the special education bar was left with the notion that business would continue as "usual", that is, the members of the special education bar, especially those who were not members of the D.C. bar, were not given any notice that their bar status would in anyway affect their practice in IDEA proceedings before DCPS nor their ability to be compensated for services rendered to their clients. The special education bar was not told in November 2004 that it was the legal position of DCPS that only members of the District of Columbia bar could appear in IDEA proceeding before it.

Historically, that had not been the way which the Office of Student Hearings had governed the appearances of the special education bar prior to requesting an opinion from the "CUPL". It would be a travesty of justice if this Honorable Court were to give credence to the deceptive and duplicitous scheme concocted by DCPS, sometime prior to January 27, 2005, and which was calculated to cause financial ruin to the "Brown attorneys". The insistent denial by DCPS that it does not undertake to regulate the practice of persons who appear in proceedings before it, lacks candor and is totally unsupported by and completely indifferent to the manner in which DCPS has conducted business since December 2002, as it specifically relates to the bar status of the special education bar. It is extremely illogical and unreasonable to believe that these attorneys would knowingly and willfully engage in the unauthorized practice of law before the Office of Student Hearings.

Yet, it is even more astounding and illogical for DCPS to aver that it has never regulated the practice of persons who appear in IDEA proceedings given its sordid past and lack of veracity when it comes to accountability with respect to special education issues, including but not limited to its record of providing special education benefits and services to the children with special needs as well as the compensation of the special education bar. The assertion of Rule 49 violations is a red herring that was calculated to divert and distract attention from the past customs and practices that allowed the "Brown attorneys" to appear in IDEA proceedings. Interestingly, to date the Defendant has not complained to Bar Counsel with respect to the "Brown attorneys" purported and alleged unauthorized practice of law except for a complaint filed by Ms. Pierson against Mr. Hill that was summarily dismissed by the State of Maryland.

Therefore, the facts are undisputed that the "Brown attorneys" have not engaged in the

unauthorized practice of law as has been alleged by the Defendant and accordingly this Honorable Court should so find and accordingly grant their Motion for Summary Judgment and deny the Defendant's Cross Motion for Summary Judgment in its entirety, with prejudice.

## II. PLAINTIFFS WERE THE PREVAILING PARTIES AND ARE ENTITLED TO REIMBURSEMENT OF REASONABLE ATTORNEYS' FEES

The Defendant argues that since the Hearing Officer did not make a finding of a denial of "FAPE", the Defendant carried its burden of proof and accordingly was the "prevailing party" in the Skrine and Smith cases. The argument of the Defendant is erroneous as the prerequisite for determining "prevailing party" status does not include finding that there was a denial of FAPE. In each of the eight cases that follow, all of which are being contested by the Defendant because there was no finding of a denial of FAPE, the Plaintiffs are the prevailing parties and accordingly are entitled to reimbursement of reasonable attorneys' fees. This Honorable Court has authority to award reasonable attorneys' fees to Plaintiffs pursuant to 20 U.S.C. §1415(i)(3) of the IDEA.[1]

Under the IDEA, parents who prevail at the administrative level in securing special education services and benefits for their children are entitled to seek reimbursement of attorneys' fees. This right to seek reimbursement of is statutory and is a well settled principle in special education law. In *Moore v. District of Columbia*, 907 F.2d 165 (1990), the Court of Appeals for the District of Columbia, in interpreting the former controlling statutes, the Education of the Handicapped Act ("EHA") and the Handicapped Children's Protection Act ("HCPA"), allowed an independent cause of action for attorneys' fee, holding that the courts may award parents attorneys' fees upon prevailing

---

[1] 20 U.S.C. §1415(i)(3)(B) of the Individuals with Disabilities Act provides "[i]n an action or proceeding brought under this section [1415], the court, in its discretion, may award reasonable attorneys fees as part of the cost to parents of a child with a disability who is a prevailing party."

in administrative causes.  The IDEIA provides that "[T]he court, in its discretion, may award reasonable attorneys' fees as part of the cost to a prevailing party who is the parent of a child with a disability".  See *Kingsberry v. District of Columbia*, 338 F.Supp.2d 2 (August 9, 2005, quoting 20 U.S.C. §1415(i)(3)(B).  "[S]ection 1415(i)(3)(B) also authorizes a parent who prevails in an IDEA administrative hearing to recover attorneys' fees by filing suit for fees in the federal court".  See *Kaseman v. District of Columbia*, 329 F.Supp. 2d. 20, (D.D.C. 2004)(citations omitted).

In each of the eight (8) cases that the Defendant has challenged, an impartial Hearing Officer presided over the matter and made a determination with respect to the merits of each case.  As a result of the foregoing, "prevailing party" was conferred upon each of the Plaintiffs because a material change in the legal relationship occurred between the Plaintiffs and the Defendant.  See *Select Milk Producers, Inc., v. Johans*, 400 F.3d939(D.C.Cir. 2005); also see *Buickhannon Board & care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598 (2001).  It is not necessary for the Plaintiffs to obtain all of the relief that they sought to achieve the status of "prevailing party".  What is required though is that has to be a significant or "material alteration in the legal relationships of the parties to permit an award of attorneys' fees.  See *Armstrong v. Vance*, 328 F.Supp.2d 50, at 57, (D.C.C.2004) quoting *Buchhannon, supra.;* also see *A.R., et al. V. New York City Dep't. of Educ.,* 407 F.3d 65, 43 IDELR 111(D.Wash. 2005) and *M.C. and S.C., parents of S.C., a minor v. Seattle School District*, 43 IDELR 11 (D. Wash. 2005).  In the following cases, each of the Plaintiffs was a prevailing party as that term is defined by the IDEIA.

1. **PLAINTIFFS SKRINE, SMITH AND HAYES ARE "PREVAILING PARTIES"**

In each of the case noted above, each Plaintiff alleged that the Defendant had violated one or more of the provisions of the IDEA.  Further, each of the Plaintiffs obtained a measure of the

relief that was requested in their respective complaint and/or request for hearing., thereby achieving the status of "prevailing party". In *Select Milk, supra.*, the court outlined the prongs that a party must satisfy to achieve the status of "prevailing party". Judge Edwards, speaking for the court, agreed with the principles of the *Buckhannon three prong test*, which states that "1)in order to be a prevailing party, a claimant must show that there has been a court-ordered change in the legal relationship between the Plaintiff and the Defendant; 2) a prevailing party in whose favor a judgment is rendered, regardless of the amount of damages awarded; 3) a claimant is not a prevailing party merely by virtue of having acquired a judicial pronouncement unaccompanied by judicial relief. It is well established that a Hearing Officer's Determination of a "judicial imprimatur" as "there is little doubt that *Buckhannon* applies to the IDEIA". See *Abraham v. District of Columbia*, 338 F.Supp.2d 113(D.C.C. 2004).

      In the Skrine matter, albeit the Hearing Officer made a finding that there was not a denial of FAPE, he ordered the Defendant to fund an independent pyscho-educational evaluation for T.S, among other relief requested and received. Similarly, in the Smith matter, the prevailing party is appropriately conferred upon Plaintiff Smith because the Hearing Officer ordered the Defendant to reimburse Plaintiff for the cost of the services an independent clinician. The Hayes Plaintiff is also a prevailing party in that notwithstanding the entry of an interim order, the Hearing Officer ordered the Defendant to fund an independent speech and language evaluation. Plaintiff Hayes obtained success on the merits of her case on a significant issues after a hearing on the merits. It is inconsequential that the Hearing Officer ordered the relief in an Interim Order. See *C.O. and J. O. V. Orange Tp. Bd. Of Educ.*, 287 F.3d 267 (3rd. Cir. 2002), holding that where a party obtains favorable interim relief he may be entitled to prevailing party status as long as the interim relief

granted was derivative of a merits hearing; also see *K.R. ex rel. M.R. v. Boar dof Educ. Of Brentwood Union Free School Dist.,* 66 F.Supp.2d 444, 139 Ed.Law Rep\. 435(E.D.N.Y.1999), holding that where only interim relief is obtained in a proceeding to enforce rights under the Individuals with Disabilities Act, a plaintiff will be considered a prevailing party and thus entitled to an award of attorneys' fees if the relief is the result of an assessment of the merits of the claim; also see, *Haley v. Pataki*, 106 F.3d 478, at 483 (2d.Circ 1997), holding that there is no automatic denial of attorneys' fees merely because only interim relief is obtained).  Clearly, in each of the above cases, there was a material alteration or change in the legal relationships between the Plaintiffs and the Defendant.  Moreover, as a result of the Hearing Officer's Determination in each of these cases, the Defendant became legally obligated to do something that it previously had not obligation to do or undertake.  Thusly, prevailing party status is appropriately and rightfully conferred upon these Plaintiffs and they are accordingly entitled to reimbursement of reasonable attorneys' fees under the IDEA.

### 2. PLAINTIFFS JACKSON, WADE, WEAVER, MASON AND D. WILLIAMS ARE PREVAILING PARTIES AND ENTITLED TO ATTORNEYS' FEES

Even though the Courts has indicated that prevailing party status may obtain through litigation on the merits, it also indicated that settlement agreements enforced through consent decrees may also serve as a basis for an award of reasonable attorneys' fees.  The Defendant argues that these five (5) Plaintiffs who terminated the administrative process by a settlement agreement are not "prevailing parties" within the meaning of the IDEA. The settlement agreements that were reached in these matters were all made apart of the record and resulted in a material change in the legal relationship of the parties.  In each instance the Defendant became legally obligated to perform an

act or refrain from doing an act that it was not previously obligated to perform or to refrain from doing. (See Complaint Exhibits 27, 30, 45, 47, and 49). The Hearing Officer necessarily had to conclude that the terms of the settlement agreements were in the best interests of the child and thereafter incorporated the terms thereof into an Hearing Officer's Determination and /memorandum which became a final order wherein the Defendant was ordered to undertake or refrain from some conduct consistent the IDEIA. See *Abraham v. District of Columbia*, 338 F.Supp. 2d 113 (D.D.C. 2004); 20 U.S.C. §1415(g). In *A.R., et al. V. New York Dep't of Educ.,* 407 F.3d 65, 43 IDELR 108(2d.Cir. 2005), the court determined that because a "parties obligations to comply with the terms of a settlement agreement [have][omit] been made apart of the order of dismissal by incorporating the terms of the settlement in the order" that a settlement of an administrative proceeding on the record is the equivalent to an administrative decree on the record.

Therefore, these Plaintiffs who entered into settlement agreements with the Defendant are "prevailing parties" notwithstanding the protestations of the Defendant and are entitled to reimbursement of reasonable attorneys' fees as provided by 20 U.S.C. §1415(i)(3)(B) of the IDEA. The Defendant's argument fails on this issue.

## **CONCLUSION**

For the above stated reasons and argument as well as the arguments that are raised in Plaintiffs Motion for Summary Judgment, Plaintiffs respectfully pray that this Honorable Court enter an Order denying the Defendant's Cross Motion for Summary Judgment; enter an Order granting Plaintiffs' Motion for Summary Judgment; award Plaintiffs a reasonable sum of attorneys' fees and such relief as to this Honorable Court is just and equitable.

        Respectfully submitted,

        /s/
        ―――――――――――――――――
        Tilman L.Gerald[928796]
        Roxanne D. Neloms[478157]
        James E. Brown& Associates, PLLC
        1220 L Street, N.W., Suite 700
        Washington, D.C. 20005
        202.742.2000
        202.742.2098-facsimile

        ***Attorneys for Plaintiffs***

Dated: August 14, 2006