## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| BRIDGET AGAPITO, for | : |
| H.A., a minor, et al., | : |
|  | : |
| **Plaintiffs,** | : |
|  | : |
| v. | :    **Civ. Action No. 05-1935 (RMC)** |
|  | : |
| DISTRICT OF COLUMBIA, et al., | : |
|  | : |
| **Defendants.** | : |

_____ :

### DEFENDANTS' REPLY TO PLAINITIFFS' OPPOSITION
### TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants, by counsel, reply to Plaintiffs' Opposition to Defendants'

Motion for Summary Judgment, filed herein August 14, 2006 ("Opposition or Pl. Opp.").

### PRELIMINARY STATEMENT

As with their summary judgment motion, the Opposition is most conspicuous for

its harsh rhetoric.  Among other things, the Defendants' arguments are found to be

"astounding and illogical," and DCPS is castigated for "its sordid past and lack of

veracity when it comes to accountability with respect to special education issues."

Opposition, p. 9.  For all the loud broadsides, however, two fundamental facts remain

unchallenged: (1) Domiento Hill, Marshall Lammers, Brenda McAllister and Christopher

West were not members of the D.C. Bar during the period the services for which

reimbursement is demanded were performed, and (2) nonmembers of the D.C. Bar cannot

properly appear before DCPS hearing officers today (and at least subsequent to April 28,

2005).  The only true question that remains here, despite the Plaintiffs' strident rhetoric, is whether there was an adequate basis for DCPS determining that the identified lawyers' earlier appearances were improper.

The Defendants' positions have been set forth in their earlier pleadings, and will not be repeated here.  While the Opposition reiterates in somewhat different verbiage much of what had been presented in earlier Plaintiffs filings – arguments and assertions to which the Defendants have already responded – there are certain matters that warrant discrete response here, and which are addressed below.

## ARGUMENT

**I.   The Defendants' Arguments Concerning Civil Rights Act and Rehabilitation Act Claims, as well as the Defendants' Specific Challenges to the Reasonableness of the Fees Claimed, Are Uncontested.**

At the outset, it should be emphasized what is *no longer at issue* in this case, in light of the Opposition.  First, the impropriety of the Plaintiffs' claims here under the Civil Rights Act and the Rehabilitation Act is no longer in dispute.  At pages 7-10 of their June 30, 2006, cross-motion for summary judgment ("Cross-Motion"), the Defendants argued that any claims based on 42 U.S.C. §1983 or 29 U.S.C. §794 must be dismissed, for the reasons there explained.  In this regard, the Opposition states, "Plaintiffs will not here offer any argument with respect to the 42 U.S.C. §1983 and Section 504 Rehabilitation Act." Opposition, pp. 1-2.  The Defendants' position in these respects, therefore, is conceded.

Second, the Defendants' challenges to the reasonableness of the fee amounts requested (Cross-Motion, pp. 17-24) are similarly unchallenged.  While the Opposition (at p. 2) peremptorily asserts that the "Plaintiffs reserve the right to respond to the reasonableness of the fee claimed after this court decides the pending dispositive motion,"

the time for the Plaintiffs' response in that respect has now passed. The complaint seeks attorneys' fees, and the invoices on which the claims herein are based were appended to the complaint. The parties agreed on a pleading schedule to address all issues concerning the fee requests and, with this filing, the timetables agreed to, and ordered by the Court, are concluded. The "right" to file yet some future additional pleading that the Plaintiffs have "reserved" does not exist. The Defendants' challenges to the invoices that are the essential predicate for this action stand undisputed, and are therefore conceded.

## II.   Eight of the Plaintiffs Have Failed to Rebut the Defendants' Demonstrations that They Were Not "Prevailing Parties" Entitled to Reimbursement of Attorneys' Fees

As pointed out in the Defendants' Cross-Motion, there is no entitlement to attorneys' fees under IDEIA. 20 U.S.C. §1415(i)(3)(B) of the Individuals with Disabilities in Education Improvement Act, provides that, "[i]n an action or proceeding brought under this section, *the court, in its discretion, may award reasonable attorneys fees* as part of the cost to parents of a child with a disability who is a prevailing party" (emphasis added). As the Circuit Court stated in <u>Alegria v. District of Columbia,</u> 391 F.3d 262, 266 (D.C.C. 2004), "[a]lthough the IDEA . . . guarantees the right to a free education, [] 'it does not explicitly guarantee the right to attorneys' fees incurred in pursuit of that education.'" (quoting <u>T.D. v. La Grange Sch. Dist.</u> <u>No. 102,</u> 349 F.3d 469, 477 (7th Cir. 2003).

Plaintiffs claim that Defendants' position that there must be a denial of FAPE for the plaintiff to be a "prevailing party" is erroneous. In <u>Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources</u>, 532 U.S. 598, 600 (2004), the Supreme Court, viewing the term "prevailing party" to be "a legal term of art," held that it did not "include a party that has failed to secure a judgment on the merits or a court-ordered

consent decree…."[1]    In Oil, Chemical & Atomic Workers, 288 F.3d 452, 456-57 (D.C. Cir. 2002),  the Court denied the fee request in a FOIA case because "in order for plaintiffs…to become eligible for an award of attorney's fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." (quoting Buckhannon, 532 U.S. at 603).  Contrary to the union's position, the Court found that the stipulation of order of dismissal "did not meaningfully alter the legal relationship of the parties" because "its only effect was to dismiss the union's lawsuit with a court order when no court order was needed." Id. at 458.

Thus, except in the case of a consent decree—and there is none here--a court has no legal basis to order relief unless plaintiff prevails on the merits of at least one, if not more, issue of the claim.  As shown more specifically below, Plaintiffs did not prevail on the merits in any of the cases where Defendants dispute "prevailing party" status.

## A.  Skrine Claim

There is no legal basis for this court to award attorneys fees in the Skrine claim. (Pl. Exh.39).  Having first noted that "[p]arent's counsel alleged additional violations in the hearing request and withdrew all claims during the hearing except the single issued listed herein,"[2] the Hearing Officer framed the question presented as follows:    "Did DCPS deny

---

[1]None of the Hearing Officer's Decisions in this case is a "consent decree."  "A consent order is an agreement reached in an administrative proceeding between parties one of which is usually the agency's litigation staff. . . .If [the agency accepts the agreement], it is issues an order much as a court issues a consent decree. . . An administrative consent order is a final agency order which is reviewable as if it were the product of a hearing." A.R. v. New York City. Bd. of Educ., 407 F.3d 65, 77, n.12 (2d Cir. 2005) (quoting 2 Charles H. Koch, Jr., Administrative Law and Practice §5.43, at 155 (2d ed. 1997)).

[2] This issue is one of three claimed in the due process hearing request. Plaintiff did not go forward on the claim for inappropriate placement or inappropriate program (i.e., IEP).

the student FAPE by failing to reply to and/or grant the parent's request for an independent

psychological evaluation in violation of 34 CFR 300.5027." (Pl. Exh. 31, HOD, p. 2)

     After finding that the parent's letter to DCPS requesting the evaluation was directed

to "no one in particular," and that no phone call was made to anyone at DCPS before the

filing of the due process request after only two weeks, the HOD concluded that defendant

had not unduly delayed responding to the parent's letter. Id. at 3-4. The Hearing Officer

also concluded that "DCPS sustained its burden of proof," and that "there was not denial of

FAPE." Id at 3, 4. The Order begins with "DCPS is the prevailing party is (sic) this matter."

However the Hearing Officer then proceeds to gratuitously direct DCPS to fund, and the

parent to obtain, an independent psycho-educational evaluation consistent with the

superintendent's cost guidelines," and to set out subsequent tasks and timelines. Id.

     Notwithstanding the fact that the hearing officer ordered DCPS to fund an

independent psycho-educational examination to be obtained by the parent, plaintiff did not

prevail on any claim. In footnote dictum, the Second Circuit has indicated that Buckhannon

"requires not only the physical incorporation of the settlement in a district court's order but

also some evidence that a district court intended to place its 'judicial imprimatur' on the

settlement." J. L. v. New York City Dept. of Educ., 407 F.3d 65 (2d Cir. 2005) (quoting

Torres v. Walker, 356 F.3d 238, 245 n. 6 (2d Cir. 2004)). Clearly, the Hearing Officer did

not intend his independent directions to DCPS to vitiate his determination that DCPS was

the prevailing party on the merits of the administrative complaint.

     Finally, Defendants submit that the holding in Buckhannon was never intended to

apply to a case such as this, where plaintiff failed to prevail on any claim, the Hearing

Officer ruled that there was no denial of FAPE, and the Hearing Officer declared the Respondent the prevailing party.

**B.  Smith Claim**

In the Smith claim (Pl Exh. 40), there were four questions presented.  The Hearing Officer found no denial of FAPE by DCPS on all four issues. (Pl. Exh. 40, HOD, p. 9) Included in the decision was an agreement of the parties for DCPS to fund evaluations that were a part of the original settlement agreement if DCPS could not do them by a certain time. Id. The Hearing Officer's findings included the history of the parent's failure to act, and the order incorporated a provision for extension of the deadlines if the parent, student and counsel for the parent caused any delay in the timetables.  Id. Given that the Hearing Officer found no denial of FAPE and the decision simply places the case back on track to meet the terms of a previous settlement agreement, there is no change in the legal relationship of the parties and plaintiffs are not a "prevailing party."

**C.    Hayes Claim**

 At the date and time set for a hearing, the parties instead discussed the case on the record. (Pl. Exh. 22, HOD, p. 2)   DCPS agreed to fund a speech and language evaluation and parties agreed to continue the case.  No testimony was taken or documents placed into evidence.  The Hearing Officer entered an Interim Order before any hearing on the merits of the case.[3]  Plaintiffs who enter into voluntary agreements before a hearing on the merits do not qualify as a "prevailing party."  J.O. v. Orange Tp. Bd. of Educ., 287 F3d 267 (3d Cir. 2002), cited by Plaintiffs, holds that that a party cannot be a prevailing party if it receives

---

[3]Plaintiffs state that "Plaintiff Hayes obtained success on the merits of her case on a significant issues [sic] after a hearing on the merits.  It is inconsequential that the Hearing Officer ordered the relief in an Interim Order." (Pl. Opp., p.13)  The HOD that plaintiff Hayes has submitted in this case (Pl. Exh. 22) did not result from a hearing on the merits.

interim relief that is not merit based. However, they are asking this Court to award attorneys

fees for just that—interim relief that is not merit based.

     **D.**     **Jackson, Wade, Weaver, Mason and D. Williams Claims.**

     The remaining five claims where Defendants have challenged plaintiffs' claims of

prevailing party status—Jackson, Wade, Weaver, Mason and D. Williams—all contained

settlement agreements which are not incorporated into an Order. They are not consent

decrees. And as stated in <u>Abraham v. District of Columbia,</u> 338 F.Supp.2d 113,

120 (D.D.C. 2004):

> It would be insufficient for an HOD *merely to mention the existence of a
> settlement agreement* or to dismiss the claim as moot due to settlement. For an
> IDEA claimant to be a "prevailing party," the HOD must <u>order</u> DCPS to
> undertake or refrain from some conduct consistent with that statute. [Emphasis
> added.]

Accordingly, judgment should be entered in favor of Defendants on these claims.

**III.**   **Plaintiffs' Counsel, Not Barred in the District of**
      **Columbia, Are Not Entitled to Attorneys' Fees.**

     In their August 24, 2006, opposition to the Plaintiffs' summary judgment motion,

the Defendants addressed the three points of Plaintiffs' reliance on documents from the

Committee on the Unauthorized Practice of Law ("CUPL") for failing to have joined the

D.C. Bar. Def. Opp., pp. 3-6. <u>As to the first</u> – the May 14, 2003, letter from the CUPL to

Domiento Hill – the Plaintiffs had characterized that letter as having determined that the Mr.

Hill's "practice before DCPS Office of Student Hearings would be governed by the

provisions of 49(c)(5) without engaging in the unauthorized practice of law." PMSJ, pp. 3-4.

The Defendants observed that the face of the letter relied on did not purport to reach such a

conclusion. Opposition, p. 3. Moreover, while the letter was based on representations

contained in a "complaint" and on Mr. Hill's "response," the Defendants submitted that

knowledge of the content those two documents was necessary to understand what the May 14 letter truly meant, and that neither of those documents – what the CUPL was actually considering – had been furnished the Court here. Id.

In response, the Plaintiffs again decline to provide those document, contending simply that "neither of those documents is germane to nor has any bearing on the issue of the alleged unauthorized practice of law," and that "[t]he nature of the complaint that was made is of no relevance." Pl. Opp., p. 3. But at the same time, the Opposition proceeds again to characterize the significance of the May 14 letter, once more asserting that CUPL "did not find that Mr. Hill had engaged in the unauthorized practice of law. Id.

If the complaint and Mr. Hill's response are irrelevant, it would seem to follow that the CUPL letter based on those documents is similarly irrelevant. But if reliance is nonetheless placed on the May 14 CUPL letter, it is simply verbal gamesmanship to say that the CUPL there found that particular conduct was not inappropriate, but simultaneously decline to identify what that conduct was, and to suggest that it somehow excuses the circumstances here.

The second item relied on by the Plaintiffs was an October 27, 2003, letter from the CUPL to Ms. Tuwiner. PMSJ Exhibit 6. The Defendants pointed out that the letter was directed to other attorneys than those involved here and, again, that the Plaintiffs had furnished none of the related documentation so that it could be known (1) in what context that letter had been issued, and (2) whether the matters being considered were relevant to the issues and attorneys here. Def. Opp., p. 4. It was also noted that the letter's reference to DCPS "rules and regulations" concerning practice in the Student Hearing Office

proceedings was inaccurate if read literally – for it is undisputed that there were no such "rules and regulations" at the time. Id.

In response, the Plaintiffs, as with the May 14, 2003 letter, furnish nothing other than opinion and characterizations of the October 27 letter; the "inquiry" to which that letter is responsive is not provided.  Rather, the Plaintiffs assert that the letter is "self-explanatory," that it "extends to attorneys who are similarly situated," (although to what is undefined), and that it effectively opines that the attorneys here involved "could likewise practice before DCPS pursuant to the 49(c)(5) exception without engaging in the unauthorized practice of law." Opposition, p. 4.  As with the May 14, 2003 letter, however, there is no reasonable way to know what the scope and effect of the October 27 letter was without knowing the content of the "inquiry" on which that letter was based.[4]

Third, the Plaintiffs relied on an August 3, 2005, email from CUPL to Mr. Hill, indicating that the Committee would "hold harmless anyone who in good faith practiced under the murky rules that existed prior April 28, 2005." PMSJ, pp. 6-7. The Defendants pointed out that, as with other CUPL communications submitted here by the Plaintiffs, it was unaccompanied by any of the documents on which it was based, or to which it was a reaction, and noted that there was nothing in that communication from which to conclude

---

[4] As to the absence of "rules and regulations," the Opposition asserts that DCPS had initiated a "policy" at some point that was tantamount to "rules and regulations, de facto or otherwise. Opposition, pp. 5-6. Nothing, however, is provided to explain or substantiate that characterization.  Moreover, while it is thereafter said that "if DCPS did not have rules and regulations allowing non-DC barred attorneys to practice in IDEA proceedings, the Impartial Hearing Officers certainly must not have been privy to any communication . . . emanating from DCPS relating to this issue," since they allowed Brown attorneys to appear (Opposition, p. 6), the Defendants are at a loss to understand the significance of that contention.  Whatever it may mean, however, the fact remains there were no rules or regulations of the sort that would permit non-D.C. barred attorneys from appearance in IDEIA hearings.

that CUPL had determined an entitlement to fees for any period of unauthorized practice. Opposition, pp. 4-5.

In response, the Plaintiffs once more provide only rhetorical broadsides. They also ignore the significance to their other arguments of that email's stating the uncertainty "that (c)(5) applied when you were practicing before DCPS." PMSJ Exhibit 14.

## **CONCLUSION**

For the reasons set forth above, it is submitted that the Plaintiffs' motion for summary judgment must be denied.

<div style="margin-left:50%">

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District
 of Columbia

GEORGE C. VALENTINE
 Deputy Attorney General
 Civil Litigation Division

/s/ Edward P. Taptich_____
EDWARD P. TAPTICH [012914]
Chief, Equity Section II

/s/ Carol E. Burroughs_____
CAROL E. BURROUGHS [415432]
Assistant Attorney General
441 4th St., N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651
carol.burroughs@dc.gov

</div>

September 13, 2006