UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIDGET AGAPITO, for** <br> **H.A., a minor, et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **DISTRICT OF COLUMBIA, et al.,** <br><br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : Civ. Action No. 05-1935 (RMC) <br> : <br> : <br> : <br> : |

## DEFENDANTS' RESPONSE TO THIS COURT'S
## MEMORANDUM OPINION & ORDER TO SHOW CAUSE

In its March 23, 2007, Memorandum Opinion & Order to Show Cause ("Order"), this Court, considering the Plaintiffs' March 21, 2007, response to the Court's March 7, 2007, Memorandum Opinion herein, stated it was "inclined to agree" that the Laffey Matrix ("Matrix") should be applied in considering the remaining fee requests, and ordered the Defendants to show cause

> . . . why this Court should not enter an order granting judgment to the remaining Plaintiffs in the amount of the "Total Remaining" fees set forth in the table on page 21 of the Court's March 7, 2007, Memorandum Opinion [Dkt.#23], less the following further reductions:
>
> - a reduction from $350 to $225 an hour for time billed by Mr. Hull;
> - a reduction from $350 to $185 an hour for time billed by Mr. Lammers;
> - a reduction from $350 to $185 an hour for time billed by Ms. Busso; and
> - a deduction of all time by Mr. Hill.

The Defendants, by counsel, respond herewith to the Order. As shown below, the Defendants respectfully contend that application of the Matrix to any of the claims herein is unsupported and inappropriate. The Defendants further respond to the four specific

1

matters identified in the Order; in this regard, Exhibit 1 hereto contains the Defendants' suggested modifications to the table at page 21 of the Court's March 7, 2007, Memorandum Opinion – to which the Order refers.

## I.  THE LAFFEY MATRIX RATES SHOULD NOT BE APPLIED TO THESE IDEIA ATTORNEYS' FEES CLAIMS.

The Matrix – a tabulation by the United States Attorney's Office for the District of Columbia showing prevailing attorneys' hourly rates for complex federal litigation – grew out of the court's decision in Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 74 F.2d 4 (D.C.Cir. 1984), cert. denied, 472 U.S. 1021 (1985), as modified by Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1524 (D.C.Cir. 1988) ("SOCM"). "The matrix creates one axis for a lawyer's years of experience in complicated federal litigation and a second for rates of compensation." Griffin v. Wash. Convention Ctr., 172 F. Supp. 2d 193, 197 (D.D.C. 2001) The Matrix, however, is not ipso facto determinative of the proper hourly rate because none of the remaining nine claims in this case include the type of complex federal litigation to which the Matrix was intended to apply.

The Laffey case itself involved "complex employment discrimination litigation." and the Matrix was intended and designed to determine fees in these types of cases.[1] 572 F. Supp. at 374. The Matrix itself makes that clear: the 11-19 years category applies to "experienced federal court litigators," and the 20+ years category applies to "very

---

[1] In determining a proper hourly fee, the Court in Laffey required a consideration of the prevailing rates in the relevant legal market, including the type of work performed. The Court relied on affidavits attesting to the attorneys experience and expertise and the hourly rates of comparable lawyers as evidence of the prevailing rates. "[T]he court finds that the relevant legal market in this action is complex employment discrimination litigation and that this market is subject to the same hourly rates that prevail in other complex litigation." Laffey v. Northwest Airlines, 572 F. Supp. 354, 374. "The court reiterates that the appropriate benchmark for a fee award is the prevailing rate for "the type of work for which [the fee applicant] seeks an award." Id.

experienced federal court litigators." See Plaintiffs' Response, Exhibit 1, Matrix explanatory note 2.  Moreover, Covington v. District of Columbia, 57 F.3d 1101 (D.C. Cir. 1995) – involved "the prevailing market rates for complex federal litigation in the District of Columbia," id. at 1103, stated that under the SOCM decision, attorneys "have to state their *federal court experience* in order to get Laffey rates." 57 F.3d at 1108 n. 17 (emphasis added).  And see id. at 1110 (petitioners' burden to justify its rates was met where they "submitted data demonstrating their attorneys' experience in the legal profession and *in litigating complex federal court cases*" (emphasis added)). Even within "complex federal litigation," the Laffey court noted that the Matrix was developed to reflect rates charged by attorneys with "exceptional" experience, expertise and reputations – attorneys with "prominence and ability" that practiced in "premier" firms. Laffey, 572 F. Supp. at 372.

> **A.**     **The remaining fees claims are not based on complex federal litigation.**

With respect to the remaining claims at issue here, only four proceedings involved were even presented to an administrative hearing officer (the parties reached a settlement agreement as to the other five).  As to the remaining five proceedings, Plaintiffs have not demonstrated any claims were difficult, complex, or should deserve more than the prevailing market rate for the type of representation involved.

An IDEIA case generally involves gathering school records and identifying whether any of the student's rights to a free and appropriate public education ("FAPE") have been denied, and if so, an attempt to resolve the matter at a resolution meeting is required by the statute.  Only when this process fails, a due process hearing is convened. Preparation for the due process hearing requires (1) the filing of a hearing request form,

(2) participation in a resolution session (in which the parties attempt to resolve the Complaint prior to a hearing), and if the resolution meeting fails, (3) the submission of a copy of all documents and witnesses to be introduced at hearing and, (4) a hearing (typically, a few hours long), where documents are introduced and testimony given, at the conclusion of which the matter is taken under advisement by the administrative Hearing Officer. See Defendants' Exhibit 2, Declaration of DCPS Office of the General Counsel ("OGC") Acting Supervisory Attorney Quinne Harris-Lindsey dated September 13, 2006.

While the Matrix rates maybe reasonable for more advanced federal court trial work such entailing motions, depositions, preparing witnesses, working with experts, and participating in a courtroom trial, the invoices and HODs in this record clearly show that none of these activities took place. There were no pre-hearing interrogatories, no production of documents or depositions, no psychiatrists or psychologists testifying about learning disorders or impairments, no briefings of intricate statutory or constitutional issues, no pre-trial briefings, no lengthy hearings, no protracted oral arguments, and usually no motions filed. Compare Covington v. District of Columbia, supra, 57 F. 3d at 1106, where the District Court (839 F. Supp. at 894) had noted that "[p]laintiffs' counsel handled very well this complicated federal case, which involved the constitutional claims of ten plaintiffs against sixteen defendants, lengthy discovery, many motions and a jury trial." [2]

---

[2] As to **D.B**., the invoice shows conferences with parent, a conference with a psychologist to schedule an exam, discussions with the child's advocate, drafting correspondence (not legal opinion letters), reviewing evaluations, drafting a hearing request, organizing the time and place of the hearing and phone calls to implement the HOD; as to **R.B**., the invoice specifies discussions with the child's attorney, conferences with the parent, phone calls with the parent and DCPS, drafting letters to parent, school and DCPS, a conference with staff of the child's school, one school visit, preparing and filing due process hearing request, preparing for and attending IEP meeting, and preparing the hearing disclosure to DCPS; as to **R.C.**, the invoice indicates a single school visit, reviewing the child's education file and evaluation report,

4

Indeed, the work described in the invoices was not complex and, except as to the invoices of D.B. and J.W., a majority of the work involved at this point was accomplished by paralegals or advocates. See invoices of C.R., Complaint Exhibit 36; E.S., Complaint Exhibit 41; D.G., Complaint Exhibit 21; R.B. Complaint Exhibit 3, T.T., Complaint Exhibit 42; R.O, Complaint Exhibit 32; and R.C. Complaint Exhibit 11. Further, there are a variety of items that show paralegals completed exactly the same tasks as the attorneys. For example, D.B.'s invoice (p.3) shows that Mr. Lammers billed $350 per hour to call the parent about an IEP signature, while a paralegal called a parent in R.O's invoice for a non-legal matter and only $105 per hour was billed. Similarly, on page 5 of T.T.'s invoice, Mr. Lammers billed $350 to draft a letter requesting a transcript and an additional $350 to draft a letter for a notarized signature, where on page 1, a paralegal drafted a status letter to the parent, billing only $105. Thus, the attorneys' time is billed at a rate 70% higher than that of the paralegals for almost identical non-complex-

---

drafting letters to the child's parent and DCPS, preparation of a settlement agreement, preparing and sending a referral letter, drafting and filing the due process hearing request, and reviewing file for IEP; as to **C.R.**, invoiced tasks include reviews of evaluation reports, preparation and filing of Due Process hearing request, and preparing the settlement agreement to DCPS; as to **J.W.**, the invoice identifies charges made for conferences with the parent, discussions with the child's attorney, drafting letters to DCPS and the parent, preparing and filing due process hearing request, brief phone calls with the parent, attorney advisor and client's case manager, researching educational needs, and preparing disclosures and a settlement agreement. None of these students even presented a case at hearing.

As to the students whose claims were presented at hearing, even still no complex matters arose: With respect to **E.S.**, responsibilities included making phone calls, attending conferences with clients and advocates, discussions with DCPS, reviewing files, drafting letters, and preparing for meetings. As to **R.O.**, the invoiced work involved phone calls, conferences with advocates, discussions with the child's attorney, reviewing files, drafting letters, and preparing for meetings and a due process hearing. As to **T.T.**, services included the preparation for the due process hearing, post-hearing conferences, drafting correspondence letters to update client's parents, and meeting with the "transcriptionist." With regards to the invoice for **D.G.**, services were conducted involving conferences with client's parents, legal research on a transportation issue, preparing and filing for part two of Due Process hearing request to DCPS, and preparation of the disclosure to DCPS. None of the events at any of the hearings were exceedingly complex or complicated, there was no cross-examination of witnesses, no experts, and no strict application of the rules of evidence. The hearings only lasted around three hours and there is no indication on the invoices or in the HODs whatsoever that any matter arose at hearing that showed it was especially complicated. (The invoices only state that he "appeared" for due process hearing.)

5

litigation tasks. Even the non-attorney advocates completed similar work as the attorneys, yet billed at a much lower rate. For example, on page 7 of E.S.'s invoice, C.S. –the advocate—held conferences with the parent regarding IDEIA matters and made phone calls to DCPS staff, billing $175.00 per hour, whereas in D.G.'s invoice page 1, Mr. Hull convened a conference with a parent billing $350.00 an hour, 50% higher than the advocate for the similar non-complex-litigation work.

Moreover, the Court's March 7 decision included Mr. Lammers' own admission, in his statement to the Bar committee, that the nature of his work was not complex:

> [T]he cases I have handled involve primarily settlement or hearing officer determination violations of the opposing party, which my supervising attorney views as uncomplicated issues. . . .

See Memorandum Opinion p. 9.

### B. Even if the Matrix is deemed relevant, the Plaintiffs have not supported its application here.

In its March 7, 2007, Memorandum Opinion (p.21), this Court stated that Plaintiffs failed to demonstrate that the rates billed were reasonable. In their Response, Plaintiffs *again* failed to make an affirmative showing of the reasonableness of their rates. They simply point to the Matrix, but fail to provide evidence of their 1) billing practices, 2) skill, experience and reputation and 3) the prevailing market rate in the community *even though in their Response (p.1), Plaintiffs acknowledge they must make these showings for the Matrix to be applied.*

Counsel are not, as seems to be assumed here, guaranteed the Matrix rates simply by pointing to the Matrix. The existence of the Matrix does not preclude the need for the showings described in Covington v. District of Columbia, supra, 57 F.3d at 1107:

6

> [A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: [1] the attorneys' billing practices; [2] the attorneys' skill, experience, and reputation; and [3] the prevailing market rates in the relevant community.

Rather, the individual experience and capabilities of the attorneys are to be evaluated, and the complexity of the litigation for which fees are sought must be assessed, before determining the Matrix rates to be appropriate.

The Court in Laffey refused to apply the Matrix mechanically, reducing the Matrix rates by one-third in awarding fees to one attorney in the case, even though it expressed no dissatisfaction with his performance:

> Because Feldman graduated from law school 19 years prior to the trial, Plaintiffs request an award of $ 150 per hour for his time. The Court has reviewed Feldman's resume . . . and concludes that it does not reflect that level of superior achievement, expertise, skill and/or reputation that justifies the hourly rates awarded Plaintiffs' retained counsel. This Court cannot assume that these qualities are a natural function of the passage of time following law school graduation.

Laffey, 572 F.Supp. at 375. See, e.g., Muldrow v. Re-Direct, Inc., 397 F. Supp. 2d 1, 4 (D.D.C. 2005), refusing to award the Laffey rates for a civil negligence case:

> [U]se of the Laffey matrix as a measure of appropriate fees for complex federal litigation has gained acceptance in this Circuit. See, e.g., Salazar, 123 F. Supp. 2d at 13. n4. However, a more troubling issue is whether these extreme high-end fees should apply in what is in essence a relatively straightforward negligence suit. Although plaintiff brought a § 1983 claim, as defendant points out (Opp'n at 3), plaintiff presented essentially the same evidence in support of her § 1983 and negligence claims. Furthermore, the case involved a single plaintiff and a single defendant; there were few pre-trial motions; the case was not vigorously litigated by defendant; and plaintiff's attorneys had already thoroughly investigated defendant in a prior case that raised similar issues. These factors all distinguish this lawsuit from the type of case in which Laffey fees are typically awarded. For example, the attorneys in Covington brought a § 1983 action on behalf of ten prison inmates who were beaten while shackled and handcuffed and nine inmates who were sent to a maximum security facility. 57 F.3d at 1103. Salazar concerned a class action which proceeded on three tracks simultaneously, requiring attorneys to monitor compliance with a remedial order, respond to an appeal and file a cross-appeal, and engage in extensive settlement negotiations which required the redrafting of remedial order. 123 F. Supp. 2d at 15-16. In short, plaintiff's

> attorneys have not successfully demonstrated "the complexity of the case they handled" as required under Covington. 57 F.3d at 1108. See also Salazar, 123 F. Supp. 2d at 12; Griffin v. Wash. Convention Ctr., 172 F. Supp. 2d 193, 202 (D.D.C. 2001) (reducing fees below those calculated using the Laffey rates in part because "once [the] appeal was completed, the resulting case was a simple Title VII action involving a handful of witness on each side and a short trial.").

Even though a trial took place, the Muldrow Court found that the case was not complex enough to award Matrix rates. And courts in IDEIA cases have referred to the Matrix as a reference point at best.[3] To be emphasized is that an attorney's longevity at the bar alone is not conclusive. See, e.g., Griffen v. Washington Convention Center, 172 F.Supp.2d 193, 199 (D.D.C. 2001):

> There is nothing automatic about the application of "Laffey" rates. They are not like a GS schedule where government employees advance to the next step by virtue of time in grade. Instead, they attempt to reflect what the market will pay with the understanding that the market will pay more for lawyers who are experienced in complicated federal litigation.

Plaintiffs have clearly failed to meet their burden that Matrix rates should even apply. As to the first element – the attorneys' billing practices--Plaintiffs failed to show any proof whatsoever. There is no description or other evidence setting forth counsel's normal billing practices (including hourly rates charged) for clients who do posses the ability to pay, and there is no indication what actual rate the attorneys here specified in their retainer arrangements with the Plaintiffs. To that extent, the Court has no basis for a

---

[3] See, e.g., Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999).

> In order to determine the prevailing market rates in the relevant community, . . . the Court will use as a point of reference the updated Laffey fee matrix prepared by the United States Attorney's Office. . . See Covington v. District of Columbia, 57 F.3d at 1109 ("Although fee matrices are somewhat crude . . [they] do provide a useful starting point").

> The Defendants acknowledge that the Blackman decision, cited in the Matrix Explanatory Notes, as well as some more recent District Court decisions, have referenced the Matrix in IDEIA attorneys' fee litigation. However, none of the decisions referring to the Matrix, have analytically addressed the propriety of applying the Matrix, it was simply applied. With respect, and for the reasons set forth herein, the Defendants believe the summary employment of the Matrix in those cases to have been in error.

determination regarding whether Plaintiffs' counsel can command the type of rates set forth in the Matrix. The fee request therefore fails to satisfy this first <u>Covington</u> element.

As to the second <u>Covington</u> element, the Plaintiffs

> must offer evidence to demonstrate their attorneys' experience, skill, reputation, and the complexity of the case they handled. In articulating the plaintiffs' burden in these cases, the Supreme Court required that fee applicants "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Blum</u>, 465 U.S. at 896 n. 11. . . .

57 F.3d at 1108. With respect to skill, experience and reputation, Plaintiffs' simply state, "in support of our position [that the Matrix rates apply], Plaintiff's counsel has attached information regarding [Mr. Hull and Mr. Lammers] reputation in the community. <u>See</u> exhibits 2 and 3," in which Plaintiffs simply attach their resumes, a supervisor's declaration as to Mr. Lammers, and a personal affidavit from Mr. Hull. No information was provided as to Messrs. Hull's or Lammers' reputation in the community, accomplishments or awards achieved, or skills that would articulate the burden that the requested rates are in line with others in the community who do similar work. <u>See</u> March 21, 2007, Response to Court Order.

Additionally, as to Mr. Lammers, his resume never even states that he is licensed in the District of Columbia. Even the recent affidavit of James Brown also does not state that Mr. Lammers was admitted to the District of Columbia Bar. Other than this Court's own notice of that fact (Memorandum Opinion p. 8), Plaintiffs fail to show Mr. Lammers had the proper qualifications to practice in the District of Columbia at all.

The Plaintiffs' summary assertions presented in their response to the Court order stand in stark contrast to the fee petition approved in <u>Covington</u> itself. There, the fee

application included specific information pertaining to all of the attorneys' experience, skill, and reputation. The petition gave detailed account of the extensive civil rights case experience of each of the attorneys.[4] It was this detailed evidentiary showing that enabled the trial court to find it reasonable to grant counsel an hourly rate at the highest level of the Matrix.

Finally, the credibility of the affidavits submitted by Messrs. Hull and Brown are questionable. While Mr. Hull's claimed hourly rate here is $350.00, his own affidavit asserts that his reasonable rate is actually $235.00 an hour. See Plaintiff's Response, Exhibit 3, p. 1. In Mr. Brown's affidavit in support of Mr. Lammers, he acknowledges that the Matrix rate for Mr. Lammers is $195.00 even though in his original invoices, Mr. Lammers is billed at $350.00 an hour. See Plaintiff's Response, Exhibit 2 p. 2. Even this Court has noted the discrepancies in its Order (p.2 in fn 2 and 3).

The third Covington element is equally unsatisfied here. While the Laffey court held that an updated Matrix demonstrated the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation, 57 F.3d at 1109, the Court had sufficient evidence to establish that the counsel there involved indeed were of comparable skill, experience and reputation. As discussed above, however, Plaintiffs have not provided the Court with sufficient evidence that their counsel possesses a level of experience and skill, or an adequate reputation, to enable a

---

[4] The Court stated:
> Gaffney's and Schember's declarations each recount their significant experience since 1975, at the Lawyers Committee for Civil Rights Under Law, and since 1977, at their own firm, practicing federal court litigation on a variety of issues. Their declarations also provide indications of their reputations, listing teaching positions and fellowships, awards received, participation in congressionally mandated studies, and chairing the D.C. Bar's Committee on Military and Veterans Rights.Covington,

57 F.3d at 1104 (footnotes excluded); see id., n. 3, 4, 5, 6, 7, 8.

10

conclusion that his qualifications are comparable to attorneys that have traditionally been awarded Matrix rates.

In sum, the Plaintiffs have requested the Court to grant their counsel an hourly rate based on the Matrix without documenting the reasonableness of granting such a rate. Under such circumstances, even if the Court were to deem the Matrix applicable, it should deny the request because Plaintiffs have simply not met their burden of proof.

## II. THE PUBLISHED DCPS GUIDELINE RATES ARE THE APPROPRIATE HOURLY RATES FOR THE SERVICES INVOLVED.

The DCPS attorney fee guideline rates—appended as exhibit 4 hereto--are the proper reference points for hourly rates here. Among other things, the DCPS guidelines set hourly rates for lawyers in the District of Columbia who handle IDEIA matters as follows:

> a. Lawyers admitted to the bar for less than five years: $135-170
> b. Lawyers admitted to the bar for five to eight years: $150-225
> c. Lawyers admitted to the bar for more than eight years: $200-275
> d. Paralegals and law clerks: $90

Guidelines for claims submitted before October 1, 2006, also had provided:

> DCPS will pay an attorney's reasonable hourly rate, taking into account the experience of the attorney and the character of the services performed.

The DCPS guideline rates are the prevailing market rate in the community for IDEIA cases. Even other cities in the District of Columbia metropolitan area have applied their own fee schedules and not the Matrix rates even though the Matrix is intended to be applied in the "Washington, D.C. area." Response Exhibit 1, Matrix explanatory notes, p. 4. For example, in the cities of Bethesda, Chevy Chase, and Silver Spring, Maryland, attorneys' fees rates for civil rights and discrimination cases, including

11

IDEIA cases, are set in the Local Rules of the U.S. District Court of Maryland (appendix B, p.84), and are identical to the DCPS rates.  See Exhibit 3.  And other Courts have even applied agency fee guidelines rates in cases where a party prevails against the agency in civil rights and discrimination cases. For example, in Hampton Courts Tenants Association v. District of Columbia, 599 A. 2d 1113 (D.C. App. November 21, 1991), the Court applied the rates set forth in the Equal Access to Justice Act, 28 U.S.C. 2412 (1988), a fee authorization statute similar to IDEIA, as prevailing market rates in the community for the tenants association who prevailed under the Rental Housing Act in the District of Columbia.  Thus, DCPS guidelines should be applied by this Court as the prevailing market rate for the District of Columbia.  And, although the claims here fall within the 2005 guidelines, the 2006 guideline rates should be applied because the rates are straightforward and clear. See Exhibit 4.

### III. THE PROPOSED HOURLY RATES FOR MESSRS. HULL, LAMMERS AND HILL, AND FOR MS. BUSSO, SHOULD BE FURTHER ADJUSTED.

The Order proposes four specific reductions:

- a reduction from $350 to $225 an hour for time billed by Mr. Hull;
- a reduction from $350 to $185 an hour for time billed by Mr. Lammers;
- a reduction from $350 to $185 an hour for time billed by Ms. Busso; and
- a deduction of all time by Mr. Hill.

Order, p. 4 (footnote omitted).  Each is addressed below.

#### A. The reduction of all time billed by Mr. Hill is appropriate.

The Defendants agree with the Court's reason for denying reimbursement of Mr. Hill's time:

> [T]he Court has already ruled [that Mr. Hill] is not eligible to collect fees because he was not admitted to practice in the District of Columbia during the relevant time period.

Order, p. 3.

### B. No award for time by Ms. Busso has been supported, or is appropriate.

Under the IDEIA, the Court is empowered to exercise its discretion in determining the amount of attorneys' fee awards. However, the Plaintiffs bear the burden of establishing all elements of the requested fee award, including an entitlement to the award, the documentation of appropriate hours and justification of the reasonableness of the rates. See Blum v. Stenson, 465 U.S. 866, 896 n. 11 (1984); Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996); Smith v. District of Columbia, Civ. No. 02-0373 (D.D.C.), Memorandum Opinion issued June 24, 2003, at 8-9. "The prevailing party shoulders the burden to provide the Court with sufficient evidence to justify its request." Smith v. Roher, 954 F. Supp. 359, 365 (D.D.C. 1997) (citing In re North, 303 U.S. App. D.C. 443, 8 F.3rd 852 (1993). And in the Order (p. 3), the Court forcefully made the same point:

> The burden to demonstrate the reasonableness of the rates billed falls on Plaintiffs alone – not on Defendants, and certainly not on the Court.

As to Ms. Busso, the Order repeatedly emphasizes the total absence of supporting information – e.g., "Plaintiffs have at no time mentioned Ms. Busso's name, let alone submitted an affidavit detailing her education and experience" (Order, p. 2). As to hourly rates, the Court made equally clear that "it has no information whatever by which to judge the reasonableness of her rates," and that "Plaintiffs have submitted nothing to

justify the reasonableness of the rates billed by Ms. Busso, and have thus failed to carry their burden." Order, p. 3.  Yet the Court nonetheless proceeded to award a $185 hourly rate – the Matrix rate granted Mr. Lammers. Id.

With due respect, the Court having properly held the burden of demonstration to be the Plaintiffs', and having directly found a total absence of information supporting *any* rate for Ms. Busso, the Court could not properly conclude *any* rate to be proper.  While the Court assumed an equation of qualifications between Ms. Busso and Mr. Lammers in order to award the former a $185/hour rate, there is no record information supporting such an equation, as the Court's Order itself makes clear.  And while the Court ferreted out Ms. Busso's date of admission to the DC Bar, years in practice alone cannot justify the award of Matrix rates (even assuming the applicability of the Matrix).

Accordingly, there being a complete absence of adequate supporting information for *any* rate for Ms. Busso, *no* proper rate can be concluded, and no award of any fees can properly be made.[5]

### C. The Court's proposed hourly rates of $225 and $185 for Messrs. Hull and Lammers, respectively, should be further reduced to $170 and $135.

As argued earlier, application of Matrix rates for work done by Messrs. Hull and Lammers is neither supported nor proper here, and the hourly rates appropriate to the character of legal representation involved are found in the published DCPS schedule.  As to Mr. Hull, therefore, the appropriate rate should be $170, not $225; concerning Mr. Lammers, the appropriate rate should be $135, not $185.

---

[5] If the Court nonetheless finds that Ms. Busso should receive some fees for her work, the hourly rate applied should be the DCPS attorneys' fees guideline rate of $135.00 per hour — the DCPS guideline rate for novice IDEIA attorneys.

14

For the Court's convenience, Exhibit 1 hereto quantifies the effect of these adjustments (as well as that for Ms. Busso). The Defendants have taken the Court's "fees that remain on the table" chart at page 21 of its March 7 Memorandum Opinion, and projected the dollar consequences of the further adjustments requested herein.

## CONCLUSION

The Laffey Matrix is clearly intended to apply to complex federal civil litigation and not to IDEIA administrative law practice. Plaintiffs' own invoices and statements confirm that the nature and character of these IDEIA cases did not entail any complex court litigation activities. And it has not been shown that counsel possesses a level of experience and skill, or an adequate reputation, to enable a conclusion that his/her qualifications are comparable to attorneys that have traditionally been awarded Matrix rates.

Accordingly, the DCPS attorneys' fees guideline rates are the prevailing market rates in the community and should be applied here. Therefore, $ 170.00 should be applied to Mr. Hull's invoices as a reasonable hourly rate for his work; $135.00 should be applied to Mr. Lammers' invoices as a reasonable hourly rate for his work; and no fees should be allowed for any work that was completed by Ms. Busso and those fees should be deducted from Mr. Lammers' invoices. At most, $135.00 should be applied to those items billed by Ms. Busso if this Court awards her any fees.

    Respectfully submitted,

    LINDA SINGER
    Acting Attorney General
    for the District of Columbia

|  |  |
|---|---|
|  | GEORGE C. VALENTINE<br>Deputy Attorney General<br>Civil Litigation Division |
|  | */s/ Edward P. Taptich*<br>EDWARD P. TAPTICH [#012914]<br>Chief, Equity Section II |
|  | */s/ Amy Caspari*<br>Amy Caspari [#488968]<br>Assistant Attorney General<br>441 Fourth Street, N.W.<br>Sixth Floor South<br>Washington, D.C. 20001<br>(202) 724-7794 |
| April 5, 2007 | amy.caspari@dc.gov |